In the

# United States Court of Appeals
## For the Seventh Circuit

---

Nos. 02-1257 & 02-1258

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CLAYTON L. WAAGNER,

*Defendant-Appellant.*

---

Appeals from the United States District Court
for the Central District of Illinois.
Nos. 01-CR-20023 & 99-CR-20042—**Harold A. Baker**, *Judge.*

---

ARGUED SEPTEMBER 17, 2002—DECIDED FEBRUARY 19, 2003

---

Before COFFEY, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* Clayton L. Waagner says that after his daughter suffered a miscarriage, he heard a voice ask "how could [he] grieve so hard over this one when millions are killed, or murdered, every year." Waagner said the voice, which only he could hear, belonged to God and that it went on to say "I have called you to be my warrior and I want you to go to war against the abortion industry." Describing himself as a "warrior for pre-born children," Waagner embarked on what ultimately became a 2-year, cross-country crime spree. The spree included staking out abortion clinics, stealing a 4-wheel drive Yukon on which he logged 30,000 miles, stealing a Winnebago motor home, robbing gas stations, burglarizing residences,

and even evading Pennsylvania state troopers after a high-speed chase. Waagner, a convicted felon, stole firearms during his burglaries, and he went to great lengths to avoid apprehension, going so far as downloading police frequencies from the Internet and storing them on a CD-ROM so he could monitor police movements on a scanner.

Waagner was eventually apprehended by an Illinois state trooper in September of 1999 and subsequently charged with a couple of federal offenses—possession of a firearm by a felon and possession of a stolen motor vehicle which crossed state lines. *See* 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 2313(a).

It is, of course, certainly not surprising that someone who claims to hear bizarre commands from God and then embarks on a massive crime spree has more than a few mental problems. And Waagner did. This became clear when he filed a notice of intent to raise an insanity defense to the charges against him. After filing his notice, the government requested a psychiatric examination, and Waagner was evaluated by Dr. Daniel S. Greenstein, a clinical psychologist whose diagnosis was adjustment disorder, delusional disorder grandiose type, and antisocial personality disorder. Dr. Greenstein testified at Waagner's trial that the diagnoses of adjustment disorder and antisocial personality disorder were not severe mental diseases or defects. However, he testified that Waagner's "delusional disorder grandiose type" is a severe mental disease and that he would not necessarily be able to appreciate the wrongfulness of his actions. The insanity defense primarily rested on this opinion, but the jury didn't buy it, as Waagner was convicted on both counts.

Despite his loss at the trial, Waagner proved to be a tough nut to crack: he escaped from the DeWitt County jail in Clinton, Illinois, where he was in custody awaiting sentencing. The escape led to 9 more months of freedom before he was arrested again in December of 2001.

Back in court, Waagner pled guilty to a charge of escape under 18 U.S.C. § 751(a). Later, he was sentenced on all three counts of conviction. The district judge found that Waagner was an armed career criminal who possessed firearms in connection with crimes of violence, that he obstructed justice by escaping and, finally, that he had not shown acceptance of responsibility for either the original charges or the escape. Based on these findings, Waagner was sentenced to 327 months imprisonment on the gun charge, 120 months on the stolen vehicle charge, and 37 months on the escape charge. The gun and stolen vehicle sentences were ordered to run concurrent, but the escape sentence was consecutive—resulting in a total sentence of 364 months.

On this appeal, Waagner seeks a new trial on the original charges. His argument rests on a claim that the jury clearly erred in concluding that he failed to meet his burden of proof on the insanity defense and that the court erred in failing to give the jury a requested instruction on the consequences that would flow from a finding of not guilty by reason of mental defect. Failing that, Waagner tacks on a trio of challenges to the sentence imposed by the district judge.

Waagner's first claim, that the jury clearly erred in failing to find him not guilty by reason of insanity, is an offshoot of a routine challenge to the sufficiency of the evidence argument. As we have noted, a defendant making an ordinary sufficiency challenge "faces a nearly insurmountable hurdle [in that we will] consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Szarwark*, 168 F.3d 993, 995 (7th Cir. 1999) (quoting

*United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir. 1997)).

In an insanity case, unlike a typical challenge to the sufficiency of the evidence, the defendant's burden is even greater. At trial, it is the defendant, not the government, that must carry the burden of proving insanity (which is an affirmative defense) by clear and convincing evidence. 18 U.S.C. § 17(b). Because, under 704(b) of the Federal Rules of Evidence, legal insanity is a question to be decided by the trier of fact, the finding here by the jury may not be disturbed unless it is clearly erroneous. *United States v. Reed*, 997 F.2d 332, 334 (7th Cir. 1993).

To succeed on an insanity defense, a defendant must prove that as the result of a severe mental disease or defect he was unable to appreciate the nature and quality or wrongfulness of his acts. 18 U.S.C. § 17(a). So the question becomes, what was the evidence the jury considered, and was it so one-sided that any decision except a finding of not guilty by reason of mental defect must be cast aside? We think not.

Dr. Greenstein offered the only expert opinion evidence in this case. But on cross-examination, the doctor testified that whether Waagner even had a delusional disorder was a very close call, made more difficult because it involved religious beliefs. He noted that a person would not necessarily be delusional simply because the person believed, based on strongly held religious beliefs, that killing abortion doctors was morally justified. Because it was a close call, Dr. Greenstein testified that he felt ethically obliged to err in favor of diagnosing Waagner with a delusional disorder. Plus, the doctor candidly acknowledged that on the same facts a different psychologist might come to a different conclusion.

Dr. Greenstein's equivocal testimony is not surprising given that none of the objective evidence pointed very

strongly toward a finding that Waagner had a severe mental disorder. Likewise, the diagnosis was further drawn into question because Waagner, despite an extensive criminal record, had no recorded history of psychiatric illness.

Dr. Greenstein's diagnosis of delusional disorder is even more dubious given that his evaluation was based mainly on Waagner's own self-reported, and we think self-serving, statements. Dr. Greenstein did not interview any other persons regarding Waagner's mental condition. Indeed, the evidence showed that Waagner failed to mention the "voices" he heard to others, particularly his wife, son, and a partner in crime who testified for the government and said he never observed Waagner acting irrationally. Likewise, various officers testified that they had no difficulty communicating with Waagner, that he acted rationally, responded to their questions, never appeared distracted, and never mentioned abortion or abortion clinics to them. And so, the evidence that Waagner suffered from a severe mental disease or defect when he committed his crimes was far from clear and convincing. In fact, it seems to us that the jury reached the correct result, not only one that was not clearly erroneous.

But even if the evidence of a disqualifying mental disorder was stronger, Waagner would still be a long way away from steering his boat into the acquittal harbor. That's because the mental disorder question is the lesser of two things to be proved to carry the affirmative defense of insanity. He had to prove that his criminal conduct was the result of his mental disorder, not the result of something which seems more likely in this case, an antisocial personality disorder. Even if he truly believed that he was "God's warrior" against the abortion industry, that does not mean that his criminal conduct was a result of his delusions. Regarding his possession of the stolen motor vehicle, Waagner admitted that God never told him to

steal a vehicle, let alone a Winnebago motor home. He further admitted that he needed a big vehicle because of his large family, that the Winnebago fulfilled that purpose, and that he was not going to drive to an abortion clinic with his wife in the Winnebago. Regarding his possession of the firearms, he also admitted that God did not specifically tell him that he needed to steal a Beretta .22 caliber pistol during a burglary.

Waagner also admitted that he had committed the crimes of unlawful possession of a firearm by a felon and possession of stolen goods in 1993, at least a half dozen years before his alleged delusions struck home. Therefore, a jury could reasonably conclude that Waagner, who admitted committing these very crimes without God's urging, possessed the firearms and the stolen Winnebago as a result of either a desire to remain a fugitive, or as a result of his antisocial personality disorder, or both, and not because he was in the grip of some bizarre delusions.

Finally, it seems to us that the evidence was overwhelming that Waagner appreciated the wrongfulness of his conduct. First, he gave the arresting Illinois state trooper false identification, and he lied about how he happened to be driving the Winnebago. Later, after confessing, he even asked the trooper if he could work out a deal. He was also selective in what he would discuss, declining to talk about his involvement in a Kentucky armed robbery. This all points to a man who knew he was in a jam and wanted to avoid, or minimize if possible, his criminal liability. This is not the stuff of a man whose actions are uncontrollable because of a severe delusional disorder.

In the face of all this evidence, and a lot of additional evidence we have not discussed (for instance, in 1999 he chose not to try to murder a doctor when a police officer arrived at an abortion clinic), Waagner's primary argument seems to be that he should win on the issue because

the government "failed to present any expert testimony." Given the nature of Dr. Greenstein's testimony and the other evidence of Waagner's sanity at the time of the offense, the government was not required to present any expert testimony of its own. *United States v. Bennett*, 908 F.2d 189, 195 (7th Cir. 1990) ("The government is not required to rebut expert testimony with its own expert as it may accomplish the same result by presenting lay witnesses and other evidence and by undermining the defense expert's credibility through cross examination."). There was, in other words, no need for the government to get its own expert and bog the trial down to what often happens in cases like this—a "battle of experts" before a jury of lay people. Reviewing the entire record in this case, we conclude that the jury did not err, let alone clearly err, in finding that Waagner failed to prove the affirmative defense of insanity by clear and convincing evidence.

Waagner next argues that the district court erred in refusing his proffered insanity instruction which would have told the jury he would be committed to a "suitable facility" if he was found not guilty by reason of insanity. This instruction was necessary, he contends, because his prior bad acts and mental state would have caused the jury to believe he might be released and return to his anti-abortion mission, if his insanity defense was accepted. We review *de novo* a district court's decision to not give a jury instruction. *See United States v. Andreas*, 216 F.3d 645, 668-69 (7th Cir. 2000).

The Seventh Circuit pattern jury instructions for federal criminal trials address this issue. The committee comment to Instruction 6.02 states, "In *Shannon v. United States*, 512 U.S. 573 (1994), the Supreme Court held that a jury may be instructed on [the] automatic commitment requirement of § 4243, but only to counteract inaccurate or misleading information presented to the jury

during trial." Waagner does not argue that the government presented inaccurate or misleading information to the jury, so there was no reason for the district judge to give his proposed instruction. *See*, *e.g.*, *United States v. Fisher*, 10 F.3d 115, 122-23 (3d Cir. 1993) (consequences instruction unnecessary when prosecutor did not suggest that defendant would be a danger to the community if found insane); *United States v. Thigpen*, 4 F.3d 1573, 1578 (11th Cir. 1993) (consequences instruction appropriate if government presents inadmissible evidence, argument, or questions implying that defendant will be released back into society if found insane). And this leads us to the sentencing issues, which require little comment.

The district judge determined that Waagner was an armed career criminal under 18 U.S.C. § 924(e), and that finding is not challenged on appeal. But the further finding that he possessed firearms "in connection with" crimes of violence is challenged. But the challenge is for naught. We give the phrase "in connection with" its ordinary meaning, and we view it expansively. *See United States v. Wyatt*, 102 F.3d 241, 246-47 (7th Cir. 1996). The evidence here against Waagner leaves little doubt that he more than satisfied the "in connection with" language. His possession of firearms was not coincidental to his bizarre mission: it was vital. He wasn't going to try to kill doctors who performed abortions with kindness—a weapon of some sort would be necessary. That his purpose was clear is also demonstrated by two things: he had a CD-ROM that contained the names and locations of abortion clinics, and he posted a message (following his escape) on an anti-abortion website wherein he threatened to kill any person who worked "for the murderous abortionist." The mind-set evidenced by this posting after the escape was little more than a repeat of the mission he was on while armed prior to his initial arrest.

Finally, the obstruction enhancement he received for the escape, and the acceptance of responsibility adjustment he didn't get, are adequately supported by the record. Waagner's challenge to the two is meritless. For these reasons, the judgment of the district court is AFFIRMED.

A true Copy:

        Teste:

_____
*Clerk of the United States Court of Appeals for the Seventh Circuit*

USCA-02-C-0072—2-19-03