In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-3675

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

DARRYL WALLACE,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 04-CR-999-1—**Blanche M. Manning**, *Judge.*

ARGUED MAY 9, 2006—DECIDED AUGUST 14, 2006

Before CUDAHY, KANNE, and WOOD, *Circuit Judges.*

WOOD, *Circuit Judge.* In this appeal, we again confront
the question of the proper approach to appellate review
of the reasonableness of a federal sentence. Appellant
Darryl Wallace pleaded guilty to wire fraud, 18 U.S.C.
§ 1343. Despite the fact that the Sentencing Guidelines
advise that a term between 24 and 30 months is appro-
priate for Wallace, the district court judge decided that
the reasonable sentence for Wallace was a significantly
more lenient one: three years' probation plus a $2,000 fine.
In addition, the court imposed several special conditions
of probation, including an order that Wallace spend the first
six months on home confinement and continue attending
psychological counseling and Gamblers Anonymous meet-

ings. We conclude that the district court failed adequately to justify such a significant deviation from the recommended guideline range; we therefore vacate the sentence and remand for further proceedings.

**I**

Merrill Lynch & Co., Inc., employed Wallace for 23 years. At the time relevant to this case, he was responsible for reconciling accounts in its stock department. Wallace admitted that, between July and October of 2003, he abused that position to record fictitious trades, which yielded gains of more than $600,000 that he credited to his personal trading account. To conceal these actions, he offset the gains with losses that he recorded in a Merrill Lynch account. He later transferred $400,000 of the fraudulent gains into his personal bank account and spent more than $30,000 before he was caught. Merrill Lynch could not determine how much Wallace owed and so waived restitution.

In a written memorandum and at sentencing, Wallace acknowledged that the advisory guidelines range was 24 to 30 months, but he appealed to the judge's discretion under *United States v. Booker*, 543 U.S. 220 (2005), and argued for a sentence below that range. Wallace asked the court to consider his need for psychological counseling to overcome a difficult childhood: his parents divorced when he was eight years old; he was raised in a tough neighborhood; he endured sexual abuse at school; he lost his brother and stepfather in a fire; and he witnessed his sister being struck and killed by a car. Although he nevertheless steered clear of crime and held a single job for over two decades, he learned from a psychologist after his arrest that he was addicted to gambling and suffered "recurrent, mild Major Depressive Disorder." After the arrest, he began attending Gamblers Anonymous and sought to continue mental health

counseling. Wallace also argued that the guidelines over-stated the seriousness of his crime by basing his offense level on the intended loss rather than the actual loss, resulting in an increase of eight points. See U.S.S.G. § 2B1.1(b)(1)(D), (b)(1)(H), cmt. n.3(A). Last, Wallace suggested that his request for leniency found support in principle in the guidelines for departing based on aberrant behavior, *id.* § 5K2.20, and post-offense rehabilitation, *id.* § 3E1.1, even though he conceded at the hearing that they didn't "fit perfectly." Counsel indicated that he was not requesting a sentence of probation only, but he proposed "a sentence of a year and a day."

The government responded that, in its view, Wallace lacked evidence that his crime was in any way caused by his difficult childhood, psychological problems, or gambling. As to Wallace's contention that the amount he was able to spend before he was arrested better captured the gravity of his offense than the amount he stole, the government pointed out that the guidelines base a defendant's offense level on the greater of actual loss or intended loss, and here the intended loss was greater. And because Wallace committed the fraud over a period of months, the government concluded, his behavior was not aberrant under § 5K2.20.

The sentencing court rejected the advisory guidelines range as "a bit much" in light of the factors enumerated in 18 U.S.C. § 3553(a). The judge accepted Wallace's argument that the guidelines overstated the gravity of his crime. She acknowledged the importance of intended loss under the guidelines, noting that "intended loss raises the cap." She did not agree, however, with the government's view that Wallace's gambling was irrelevant. She explained, "But as a practical matter, [the loss] was roughly $30,000, and the gambling obviously was a compelling reason for this taking place." In giving Wallace what she labeled a "World Series break," the court, consistent with § 3553(a)(1), considered his history and personal characteristics and

could not "help but be impressed" that in spite of a difficult childhood, psychological problems, and a gambling addiction, he had "really had an exemplary life until he faltered and did this one ridiculous, stupid crime."

The court also considered the need to deter and rehabilitate Wallace. By starting to attend psychological counseling and Gamblers Anonymous, Wallace, in the court's view, had shown that "he's already deterred." And, according to the court, Wallace's "extraordinary remorse" demonstrated that "the rehabilitation process has already begun." The judge concluded that: "[O]ne of the most important aspects of what punishment should achieve in this case has to do with Mr. Wallace's mental health and his gambling addiction. I think that can be achieved without imposing a prison sentence, throwing him into prison with hardened criminals." Although the judge at sentencing thus made clear that she was basing Wallace's sentence on the § 3553(a) factors, the judgment itself refers to the guidelines for departing based on mental and emotional condition, U.S.S.G. § 5H1.3, and aberrant behavior, *id*. § 5K2.20.

## II

On appeal, the government contends that Wallace's sentence is not justified, either as an exercise of discretion based on the § 3553(a) factors, or as a "departure" based on the guidelines cited in the judgment. We can easily dispose of the second point: after *Booker* the concept of "departures" is outmoded. *United States v. Arnaout*, 431 F.3d 994, 1003 (7th Cir. 2005). It is true, on the one hand, that cases analyzing "departures" pre-*Booker* remain useful by way of analogy, as we assess the overall reasonableness of a sentence. *United States v. Castro-Juarez*, 425 F.3d 430, 434-36 (7th Cir. 2005). A bad reason for departing pre-*Booker* remains a reason that, at least as a matter of advice

from the guidelines, is still bad; if the district court thought that the reason applied to the case before it, a very good explanation would be necessary. *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006). On the other hand, the scope for sentences outside the recommended guidelines range has expanded, as we explained in *United States v. Long*, 425 F.3d 482 (7th Cir. 2005):

> Freed from the mandatory nature of [the guidelines'] structure, the court [is] free to consider the factors outlined in 18 U.S.C. § 3553(a), including those that were specifically prohibited by the guidelines and those that are not constitutionally prohibited such as race or sex. See, *e.g.*, § 5H1.11 (discouraging courts to factor "[m]ilitary, civic, charitable, or public service; employment-related contributions; and similar prior good works" in deciding whether to depart); § 5H1.12 (stating that "[l]ack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing" are not relevant grounds in determining whether a departure is warranted).

425 F.3d at 488. See also *United States v. Bonner*, 440 F.3d 414, 417 (7th Cir. 2006) (quoting *United States v. Paladino*, 401 F.3d 471, 487-88 (7th Cir. 2005) (Kanne, J., dissenting)).

Two things are critical now: first, whether the district court's choice of sentence is adequately reasoned in light of the § 3553(a) factors, see *Arnaout*, 431 F.3d at 1003; and second, whether the sentence can ultimately be deemed a reasonable one. *Accord, United States v. Rattoballi*, 452 F.3d 127, 131-32 (2d Cir. 2006); *United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006). At each point, the focus is on what the district court did, not on what it might have done. Thus, the procedural inquiry focuses on the actual reasons given, not on whether the sentence could have been supported by a different rationale; the substantive inquiry

looks at the sentence imposed, not at all the other hypothetical sentences that might have been chosen. *United States v. Cunningham*, 429 F.3d 673, 679 (7th Cir. 2005); *Castro-Juarez*, 425 F.3d at 433.

Before addressing the question whether the district court's decision in Wallace's case was procedurally and substantively reasonable, we think it useful to explore both concepts in greater detail. We have already had occasion to discuss what we expect of the district courts from a procedural standpoint. As we held in *United States v. Dean*, 414 F.3d 725 (7th Cir. 2006):

> . . . [T]he farther the judge's sentence departs from the guidelines sentence (in either direction—that of greater severity, or that of greater lenity), the more compelling the justification based on factors in section 3553(a) that the judge must offer in order to enable the court of appeals to assess the reasonableness of the sentence imposed. (*Cf. United States v. Dalton*, 404 F.3d 1029, 1033-34 (8th Cir. 2005), reversing a 60-month sentence when the minimum guidelines sentence was four times as long.)

*Id.* at 729. In other words, the new regime imposes a procedural obligation on the district court judge to explain what it is that persuaded her to choose the sentence she did. Other circuits have also recognized the importance of the district court's explanation for a sentence, although they have not necessarily adopted *Dean* wholesale. See, *e.g.*, *Rattoballi,* 452 F.3d at 134 ("our own ability to uphold a sentence as reasonable will be informed by the district court's statement of reasons (or lack thereof) for the sentence that it elects to impose"). See also *United States v. Green*, 436 F.3d 449 (4th Cir. 2006), where the court held that:

> [a] sentence falling outside of the properly calculated Guidelines range is not *ipso facto* unreasonable. But

if that sentence is based on an error in construing or applying the Guidelines, it will be found unreasonable and vacated. See 18 U.S.C. § 3742(f)(1). The same is true if the sentence is imposed outside the Guideline range and the district court provides an inadequate statement of reasons or relies on improper factors in departing from the Guidelines' recommendation. See *id.* § 3742(f)(2).

436 F.3d at 457.

*Booker* also confers new procedural rights on the defendant, as *Dean* recognized:

> . . . [T]he defendant must be given an opportunity to draw the judge's attention to any factor listed in section 3553(a) that might warrant a sentence different from the guidelines sentence, for it is possible for such a variant sentence to be reasonable and thus within the sentencing judge's discretion under the new regime in which the guidelines, being advisory, can be trumped by section 3553(a), which as we have stressed is mandatory.

*Id.* at 730-31. This is an important part of the reason why this court has remanded for resentencing all pre-*Booker* cases in which the defendant properly preserved his objection.

Although it is more difficult to describe the content of substantive reasonableness review, this should not be surprising. Other areas of the law in which the ultimate standard is "reasonableness" pose a similar challenge. For example, § 104 of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214, 1218-19 (Apr. 24, 1996), amended the federal statute providing for *habeas corpus* relief for state prisoners, 28 U.S.C. § 2254, so that it now contains an express reasonableness requirement. Federal courts may not grant relief in such cases unless the state court rendered a decision that either "was

contrary to, or involved an *unreasonable* application of," clearly established federal law, § 2254(d)(1), or the state court's decision "was based on an *unreasonable* determination of the *facts*," § 2254(d)(2) (emphasis added). The Supreme Court commented in *(Terry) Williams v. Taylor*, 529 U.S. 362 (2000), that "[t]he term 'unreasonable' is no doubt difficult to define. That said, it is a common term in the legal world and, accordingly, federal judges are familiar with its meaning." *Id.* at 410. See also *Booker*, 543 U.S. at 766 (stating that "we think it fair . . . to assume judicial familiarity with a 'reasonableness' standard.").

This statement suggests that we may take guidance from the way in which the term "unreasonable" (or its converse, "reasonable") has been defined for purposes of § 2254(d) as we now confront the same term as the Court used it in *Booker*. *Williams* itself provides some insight. Importantly, the Court there held, and later reiterated in *Woodford v. Visciotti*, 537 U.S. 19 (2002), that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." 529 U.S. at 410 (emphasis in original); quoted with approval in *Woodford*, 537 U.S. at 25. In addition, *Williams* held that the inquiry into reasonableness is an objective one. 529 U.S. at 409-10. In an effort to flesh out the way that a reviewing court should approach this question, we described the term "unreasonable" as meaning "something like lying well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). In *Hall v. Washington*, 106 F.3d 742 (7th Cir. 1997), we said that a decision was reasonable if it was "one of several equally plausible outcomes." *Id.* at 749. Indeed, the Second Circuit has already described its *Booker* review in almost exactly these words. See *Fernandez, supra*, 443 F.3d at 34 ("we conclude that the sentence was well within the broad range of reasonable sentences that the District Court could have imposed in the circumstances presented"). On the

other hand, a result will be unreasonable if it is at "such tension with governing U.S. Supreme Court precedents, or *so inadequately supported by the record*, or so arbitrary, that a writ must issue." *Id.* (emphasis added).

Another area that sheds some light on the substantive reasonableness inquiry relates to supervised release. In this domain, the guidelines have always been advisory. See, *e.g.*, *United States v. Salinas*, 365 F.3d 582, 588 (7th Cir. 2004). A term of imprisonment outside the range advised by the policy statements in Chapter 7 of the guidelines has been found not to be "plainly unreasonable" where the district court explained which factors under § 3553(a) informed her choice of sentence, acknowledged the range advised by the policy statements, and explained her reasons for rejecting it. *Id.* at 589-90. Our opinions applying this approach demonstrate that district courts indeed possess substantial discretion in their choice of a reasonable term of imprisonment. See, *e.g., United States v. Carter*, 408 F.3d 852, 854-55 (7th Cir. 2005) (affirming 24-month term where policy statements advised term of 6-12 months); *Salinas*, 365 F.3d at 590 (affirming 24-month term where policy statements advised 3-9 month range); *United States v. Harvey*, 232 F.3d 585, 588 (7th Cir. 2000) (affirming 24-month term where policy statements advised 4-10 months); *United States v. Hale*, 107 F.3d 526, 529-30 (7th Cir. 1997) (affirming 30-month term where policy statements advised 5-11 months). While these were all upward adjustments from the advisory range, we see no reason in principle why the reasonableness inquiry should be different for downward changes.

Since *Booker*, the question whether a sentence that falls within a properly calculated guidelines range is reasonable has had a relatively straightforward answer in this circuit: such a sentence is entitled to a rebuttable presumption of reasonableness, see *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005), and the court of appeals gives great deference to a district court's decision *not* to deviate

from the guidelines. (There is a conflict in the circuits on this point, as the Second Circuit pointed out in *Fernandez*, 443 F.3d 27-28 (collecting cases), but our position has been firm ever since *Mykytiuk* was decided.) Generalizations are harder for sentences either below or above the range recommended by the guidelines. In *Rattoballi*, the Second Circuit stated that it had opted (for all sentences) "instead to fashion the mosaic of reasonableness through case-by-case adjudication."452 F.3d at 133. "[O]n appellate review," it continued, "we will view as inherently suspect a non-Guidelines sentence that rests primarily on factors that are not unique or personal to a particular defendant, but instead reflects attributes common to all defendants." *Id.* The reasons that the district court had given in *Rattoballi*—the defendant's admission of guilt, the hardship of the criminal process, the severe toll that the case had taken on the defendant's business, and the role that another person had played in the scheme—were all of the latter type, in the Second Circuit's view. It therefore concluded that the lenient non-guidelines sentence the district court had imposed was unreasonable when assessed against the § 3553(a) factors. *Id.* at 137.

The distinction between common and individualized factors is one that is compatible with our decisions. For example, in a number of cases this court has been asked to find that U.S.S.G. § 2D1.1(c), which uses the infamous 100:1 ratio between powder and crack cocaine (that is, it treats 100 grams of powder and 1 gram of crack in the same way), is itself "unreasonable." We have held, however, that *Booker* did not authorize courts to find that the guidelines themselves (or the statutes on which they are based) are unreasonable. See *United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006); *United States v. Gipson*, 425 F.3d 335, 337 (7th Cir. 2005). Only after computing the guidelines range using the correct 100:1 ratio does the district judge have discretion to impose a sentence that is above or below that

range, as long as she respects statutory maxima and minima, if the factors outlined in § 3553(a) indicate that such a sentence would be reasonable for the particular defendant. In short, reasonableness is something that must be assessed at retail; wholesale conclusions that are nothing but disagreements with the guidelines are impermissible.

The Eleventh Circuit faced a sentence much like the one before us in *United States v. Crisp*, 2006 WL 1867754 (11th Cir. July 7, 2006). In that case, the defendant had also participated in a fraudulent scheme, through which he "bilked a bank out of nearly half a million dollars." *Id.* at *1. After he was caught, he pleaded guilty and gave the government substantial assistance in prosecuting a co-conspirator. The advisory guidelines range for his crime was 24 to 30 months, but the government filed a motion for a downward "departure" under U.S.S.G. § 5K1.1, in which it recommended that the court cut the range in half and sentence the defendant at the low end (*i.e.* 12 months). The district court started with this recommendation and took it several steps further: in the end, it sentenced the defendant to 5 hours' imprisonment (a term the government labeled "farcical" in open court, *id.* at *2) and five years' supervised release. The court of appeals reversed, on the government's appeal. It stressed the fact that the district court was largely motivated by its disagreement with the government about how much benefit the defendant should have received from his assistance. *Id.* at *4. It also reviewed the final sentence for overall reasonableness, however, and concluded that it failed the test, with this explanation:

> As the Eighth Circuit recently said: "An extraordinary reduction must be supported by extraordinary circum-stances." *United States v. Dalton*, 404 F.3d 1029, 1033 (8th Cir. 2005) (discussing a § 5K1.1 departure). The circumstances of this case are not out of the ordinary at all, much less extraordinary enough to justify the extremely lenient sentence the court imposed. . . . Other

courts have found that a district court's "unjustified reliance upon any one [§ 3553(a)] factor is a symptom of an unreasonable sentence." . . . [citing *Rattobelli, supra*, among other cases]. That is what happened in this case. The district court focused single-mindedly on the goal of restitution to the detriment of all other sentencing factors. An unreasonable approach produced an unreasonable sentence.

2006 WL 1867754 at *6.

Turning now to Wallace's sentence, we first consider whether the district court has given us an adequate statement of its reasons for the sentence it selected. In doing so, we consider all of the district court's reasons, oral and written alike. *United States v. Baker*, 445 F.3d 987, 992 (7th Cir. 2006). Those reasons included the following: Wallace's unfortunate history; his personal characteristics; his exemplary life up until the time of his "one, stupid crime"; his conscientious participation in the Gamblers Anonymous program, and the role his gambling addiction played in the crime he committed; his need for effective mental health counseling; his "extraordinary" remorse; and the gravity of his crime as measured by actual loss rather than intended loss. With the exception of the last factor, which (in the Second Circuit's sense) is something that will be common to a great number of partially successful financial crimes, these factors were all particular to Wallace.

Although the court's review of Wallace's individual traits was helpful, we are troubled by the fact that the judge said that she thought that culpability should be measured by actual loss rather than intended loss. This was not an appropriate consideration, as the guidelines have already made the judgment that intended loss is what counts. See U.S.S.G. § 2B1.1, cmt. n.3(A). Every defendant who commits a financial crime and gets away with only some of the money will make exactly the same argument—as *Rattoballi*

put it, this is an attribute common to all defendants. The question is thus whether this was such an incidental part of the district court's reasoning that we can be confident that it played no role in the court's choice of sentence, or if it may have made a difference. Furthermore, we must also satisfy ourselves that the court's consideration of Wallace's individual traits fully explained why such a large deviation was reasonable— why, in other words, these circumstances were so extraordinary as to justify eliminating virtually all incarceration from the sentence.

The government argues that the district court's reasons were insufficiently weighty to justify imposing a probationary sentence when the guidelines called for at least 24-months' imprisonment. It brands this a "one-hundred percent reduction in sentence," which would be even more drastic than the reductions of 75%, 73%, and 68% below the guidelines minimum that the Eighth Circuit has rejected as insufficiently supported. See *Dalton, supra*, 404 F.3d 1029; *United States v. Coyle*, 429 F.3d 1192 (8th Cir. 2005); *United States v. Saenz*, 428 F.3d 1159 (8th Cir. 2005). Moreover, the government says, the elements of Wallace's history and characteristics on which the court relied—his difficult childhood, gambling, and remorse— were not compelling enough to justify the court's "one-hundred percent reduction in sentence."

We are reluctant to distill the reasonableness inquiry into a numbers game that relies only on a numerical or percentage line for reductions. The percentage reduction will always seem larger if the overall number is a small one: 24 months less than a possible sentence of 25 months would be a 96% reduction; 24 months less than a possible sentence of 240 months would be a 10% reduction. Nevertheless, as we have already held in *Dean,* the greater the deviation, the more compelling the district court's explanation must be. The difficult question here is whether the district court's explanation met that standard.

The government thinks not. It argues that the district judge was mistaken to rely on Wallace's remorse and lack of criminal history, because the guidelines already accounted for both through a downward adjustment for acceptance of responsibility and the Category I criminal history. But if *Booker* means anything at all, it must mean that the court was permitted to "give further weight to a factor covered by a specific guidelines adjustment, especially where (as is true here) that 'factor is present to an exceptional degree or in some other way makes the case different from the ordinary case where the factor is present.'" *United States v. Johnson*, 427 F.3d 423, 428 (7th Cir. 2005) (quoting *Koon v. United States*, 518 U.S. 81, 96 (1996)); see also *Baker,* 445 F.3d at 992. Though the guidelines acknowledged Wallace's lack of criminal history by assigning him a criminal history category of I, that category also includes defendants with one criminal history point and defendants with expired convictions. Here, the court was impressed by Wallace's lifetime of obeying the law. It based its finding about Wallace's "extraordinary remorse" on the fact that he confessed his guilt immediately when confronted by his employer and sought professional help promptly and independently. Even before *Booker* these were permissible grounds for a departure. *United States v. Jaroszenko*, 92 F.3d 486, 491 (7th Cir. 1996).

The government also points out that the guidelines cited in the written judgment—U.S.S.G. § 5H1.3 (Mental and Emotional Condition) and § 5K2.20 (Aberrant Behavior) (both of which appear as "policy statements" in the 2005 version of the guidelines)—do not apply. That is true literally, but this does not mean that the district court was required to ignore them altogether. In fact, although § 5K2.20 does not strictly apply, the court's action in recognizing the aberrant nature of Wallace's crime (compared with his earlier unblemished record) is consistent with the broader policy that section reflects. The link

to § 5H1.3 is certainly weaker; Wallace did not offer evidence that his psychological problems contributed to the fraud.

In the end, it is the fact that the court chose to eliminate any meaningful incarceration for a crime that involved $400,000 of intended loss that makes this such an extraordinary choice. Compare *Crisp,* 2006 WL 1867754 at *5. We have no need to decide here whether such a sentence was impossible to justify; the government has vigorously defended similarly substantial upward deviations from the recommended range, and we are concerned to maintain evenhanded standards of reasonableness on both sides of the line. We do conclude, however, that under *Dean* the court needed to offer a much more thorough explanation of this choice, so that we would be in a position to conduct a meaningful review of the reasonableness of the sentence. Even though our standard of review is deferential, we cannot be left to guess at the district court's rationale in a case like this.

The district court acknowledged that it was giving Wallace a significant break—a "World Series" break, in fact. Such a break requires, we hold, a "World Series" explanation. Because the court may have been influenced by a disagreement with the command of the guidelines to base sentences on intended loss, and because we cannot tell from the explanation given thus far what it was that took Wallace's case so far out of the normal run, we VACATE the sentence and REMAND for further proceedings.

A true Copy:

Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*