In the

# United States Court of Appeals

## For the Seventh Circuit

No. 05-2788

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MINOR R. RIVERA,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 05 CR 28—**Robert W. Gettleman**, *Judge.*

ARGUED APRIL 6, 2006—DECIDED SEPTEMBER 6, 2006

Before BAUER, WOOD, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Minor R. Rivera, possessed of a long and checkered criminal career, escaped from a Salvation Army halfway house on October 7, 2004. Within twenty-four hours of the escape, however, he realized the error of his decision and voluntarily returned to the facility. Rivera was indicted by a grand jury under 18 U.S.C. § 751(a), and he pleaded guilty without a plea agreement. At sentencing, the district court held Rivera to be a career offender and, after properly calculating his Guidelines range, sentenced him to 37 months' imprisonment. Rivera argues on appeal that this sentence is unreasonable; that the judge failed to adequately consider the circumstances of his "walk-away." We affirm.

Having arrived on October 4, 2004, Rivera's tenure at the Salvation Army Community Correctional Center lasted only four days. On October 6, he received permission from the Center's staff to leave the facility in order to obtain a medicine prescription from the Veterans Administration Hospital. Later that day, he was returned to the Center by Chicago police officers. The officers informed the staff that they suspected him of having either used, or been in possession of, heroin. Based on this information, the Salvation Army personnel conducted a drug test on Rivera's urine. The test indicated the presence of heroin. The Center's staff then placed him on "no movement" status until further notice. In fear of being returned to a penal institution, Rivera fled the halfway house on October 7. He returned the following day, October 8, 2004, and was taken into custody by U.S. Marshals.

Because our holding turns on the detailed analysis the district court gave each issue at sentencing, we review the hearing in detail. To start, we note that Rivera's sentencing hearing was conducted on May 12, 2005, exactly four months after the Supreme Court issued its opinion in *United States v. Booker*, 543 U.S. 220 (2005). The district court followed the proper post-*Booker* sentencing procedure of first calculating the defendant's Guideline range, considering the commentary and policy statements, and then looking to 18 U.S.C. § 3553(a). But this was no simple task.

When Rivera was transferred to the halfway house it was to complete a sentence for having violated his supervised release on a bank robbery conviction. The probation officer initially calculated his sentence under U.S.S.G. § 2P1.1. This gave him a base offense level of 8, with a subsequent four-level reduction for voluntarily returning within 96 hours without committing a crime in the interim period. He also received a two-level reduction for acceptance of responsibility, § 3E1.1. Rivera, however, was a career offender and

subject to sentencing under § 4B1.1. The district court calculated his base offense level at 17 and gave him a § 3E1.1 three-level reduction. Section 4B1.1 automatically pegged his criminal history category at VI. These factors yielded a suggested range of 37 to 46 months.

But Rivera challenged his career offender status and the application § 4B1.1. His escape from the halfway house, he argued, was not a crime of violence. Relying on our decision in *United States v. Bryant*, the district court rejected this claim, took notice of Rivera's two prior convictions for crimes of violence (both for bank robbery), and reaffirmed the career offender classification. 310 F.3d 550, 554 (7th Cir. 2002) (holding that, where appellant failed to return to halfway house, the "crime of escape, as a category, is a crime of violence for purposes of the federal sentencing guidelines"). In reasoning through this calculation the court noted that "to go below 6 as a criminal history category, I would have to basically throw out 4B1.1. I suppose I could do that under *Booker* if I wanted to, but, very frankly, I'm not inclined to do that." Sent. Tr. at 14.

Rivera also argued that the Guidelines contained an error in that § 4B1.1[1] did not allow for a four point offense level

---

[1]  U.S.S.G. § 4B1.1, Career Offender, states, in relevant part:

(a) A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

(b) . . . if the offense level for a career offender from the table in this subsection *is greater than the offense level otherwise applicable*, *the offense level from the table in this*
(continued...)

reduction for a voluntary return under § 2P1.1(b)(2). The Sentencing Commission, he submitted, made a mistake. The district court was initially concerned with this application and reasoned that if they applied the career offender guideline "without giving any credit for the fact that he turned himself in, then we're saying there is no difference between somebody who turns themselves in within a short period of time and someone who doesn't, and I don't think that makes sense to me." *Id.* at 15. The government countered, arguing that the language of § 4B1.1(b) is plain, and that it dictates the application of the higher offense level regardless of the crime, criminal conduct, or specific offense characteristics such as §2P1.1(b). This, the government posited, "is one of the reasons why the career offender statute has the teeth it does. . . ." *Id.* at 18. After hearing defense counsel's counter-argument, the court agreed with the government and stated "my concern was probably incorrect, and I reluctantly make that conclusion. But it sounds right to me." *Id.* at 19.

The district court then heard argument from the government and defense counsel on the circumstances of the crime, and a statement from the defendant. The government stressed Rivera's 26 prior convictions and noted that his escape occurred while he was completing a term for violating his supervised release on one of his bank robbery

---

[1] (...continued)
   *subsection shall apply.* A career offender's criminal history category in every case under this subsection shall be Category VI.

(Emphasis added). Where the offense statutory maximum is 5 years or more, but less than 10, as is the case with 18 U.S.C. § 751(a), the Offense Level is 17. Subsection (b) then explicitly states that "[i]f an adjustment from § 3E1.1 (Acceptance of Responsibility) applies, decrease the offense level by the number of levels corresponding to that adjustment."

convictions. Defense counsel opened by stressing the advisory nature of the Guidelines post-*Booker*. Counsel continued to argue that Rivera's problem was with drugs, that further incarceration would do little good, and that what he needed was to be secured in a facility where he could receive drug treatment. In his statement to the court, Rivera pleaded for leniency, admitting he made a mistake, and stressed his desire to be placed in a treatment program and to better his life. The district court then made its finding.

Judge Gettleman opened his remarks by noting that it was his duty to "determine whether the . . . guidelines sentence here is a reasonable sentence and whether there is another reasonable sentence that I would prefer to impose." *Id.* at 27. He then reflected on Rivera's plea for leniency, stating that he believed the defendant was sincere, and that the court had considered granting a reduced sentence. This expression, however, was immediately followed by the statements below:

> But, very frankly, with the record that you have, and I think a very strong expression in the guidelines by the sentencing commission, which I don't find to be unreasonable at all, someone with a career offense level as extensive as yours, you did make a mistake, and you did correct the mistake, and you're being given credit for it in the sense that I'm going to consider the very lowest end of an appropriate guideline range.
>
> And you are given, of course, the three points for acceptance of responsibility. . . .
>
> Well, the offense level here is 14, and the criminal history is 6. And I don't think that the sentence called for by that is unreasonable by any means considering the fact that we do, I think [the Assistant United States Attorney] put his finger on something that's very

important here that really can't be overlooked, when we put people in these halfway houses for treatment, we're imposing a lot of trust on those people. If that system doesn't work, we're not going to have a halfway house system for anybody. . . .

People who violate those conditions as you did, even if it was only temporary, even if you caught yourself in time—and I commend you for that, I really do. And I'm going to make sure that that's in the order that I enter. But just by having violated those conditions puts the entire system in jeopardy right now. . . .

So I think the guidelines sentence here is a reasonable sentence. And I'm going to impose the lowest sentence of 37 months. I'm going to recommend the comprehensive drug treatment and aftercare in the strongest possible terms.

*Id.* at 28-30.

Despite this thorough consideration of the Sentencing Guidelines policy and reasoning on deterrence, Rivera argues now that the district court erred in imposing the Guidelines sentence. In making this argument, he does not claim error in finding he was a Career Offender or in calculating his Guidelines range. Instead, Rivera argues that the Guidelines sentence itself was unreasonable as applied. He claims that the district court failed to consider the circumstances of his escape under § 3553(a)(1), and that 37 months is simply too long a punishment in light of his voluntary return.

We review the district court's criminal sentence to ensure that it is not unreasonable. *United States v. George*, 403 F.3d 470, 473 (7th Cir. 2005). As noted above, the court must first calculate the Guidelines' range and then consider the factors contained within 18 U.S.C. § 3553(a). *See, e.g. United States v. Walker*, 447 F.3d 999, 1007 (7th Cir. 2006). A sentence, such as this, that falls within a properly

calculated Guidelines' range is entitled to a rebuttable presumption of reasonableness. *United States v. Mykytiuk*, 415 F.3d 606, 608 (7th Cir. 2005). When reviewing a challenge to this presumption, our standard is not *de novo*; it is one of great deference. *United States v. Wallace*, 2006 WL 2338021, No. 05-3675, slip op. at 10 (7th Cir. Aug. 14, 2006). And while a defendant's sentence is to be measured against the § 3553(a) factors, "it will be a rare Guidelines sentence that is unreasonable." *Mykytiuk*, 415 F.3d at 608. This is because the Guidelines represent eighteen years of "careful consideration of the proper sentences for federal offenses" and "remain an essential tool in creating a fair and uniform sentencing regime across the country." *Id.* at 607-08.

Section 3553(a) instructs the district court to consider, in part, "the nature and circumstances of the offense and the history and characteristics of the defendants," § 3553(a)(1), as well as the need for the sentence to "reflect the seriousness of the offense," "provide just punishment," "afford adequate deterrence to criminal conduct," and "protect the public from further crimes of the defendant," § 3553(a)(2)(A)-(C). While a review of this section is mandatory, the court need not analyze each factor in a point-by-point manner on the record. *George*, 403 F.3d 472-73. Instead, we look to see if the district judge provided an "'adequate statement' of his reasoning that a particular sentence is appropriate for the defendant." *United States v. Lister*, 432 F.3d 754, 761 (7th Cir. 2005) (quoting *United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005)). Judge Gettleman's statement on the consequences of Rivera's escape from the halfway house system as a whole was more than adequate to satisfy this review. After listening to argument from both Rivera and the government, the court reflected on the policy behind Rivera's offense level and criminal history category, and the impact of his escape, concluding that "when we put people in these halfway

houses for treatment, we're imposing a lot trust on those people. If that system doesn't work, we're not going to have a halfway house system for anybody." Sent. Tr. at 29.

Further, the district court provided ample opportunity for Rivera to direct its attention to factors contained in § 3553(a) that possibly warranted a sentence different than that suggested by the Guidelines. *See Wallace*, slip op. at 7; *Dean*, 414 F.3d at 730-31. In doing so, the court heard both defense counsel's argument and Rivera's personal statement that the escape was a simple mistake, and that what he needed was not imprisonment, but drug-treatment. The court explicitly considered and rejected this plea, reasoning that, given Rivera's criminal record and the strong policy expression in the Guidelines, the 37- 46 months' range was, indeed, appropriate. And, despite Rivera's claim to the contrary, the district court did accommodate the non-violent nature and circumstances of his offense: "you did make a mistake, and you did correct the mistake, and you're being given credit for it in the sense that I'm going to consider the very lowest end of an appropriate guideline range." *Id.* at 28.

But Rivera presents something of a collateral attack against this reasoning on appeal, arguing that while the district court's consideration of his record was not technically incorrect, it overstated the nature of his criminal past. The majority of his 26 convictions, he points out, were for the petty thefts of meat. These convictions, however, did not exist in a vacuum. Paired with the majority of the seventeen theft convictions is a note in the Pre-Sentence Investigation Report that the defendant was either in possession or under the influence of narcotics at the time of the offense. Moreover, after one of the arrests Rivera admitted that he stole the meat to support his heroin addiction—the same addiction that he blames for his two bank robbery convictions and the instant escape. In light of these facts, the district court's characterization of Rivera's record and

career offense level as "extensive," and thus deserving of a 37 month sentence, is wholly reasonable. Sent. Tr. at 28.

Rivera next argues that the length of his sentence reduces the incentive for future escapees to return without incident, and that this is implicitly contrary to § 3553(a)(2)(B). But this subsection speaks on the first order of deterrence: "to afford adequate deterrence to criminal conduct." Generally, the threat of a penal sentence is intended to discourage the commission of the crime, *i.e.*, Rivera's escape, in the first place. Once Rivera walked out of the halfway house without permission, that crime was already committed, and as the district court noted, it threatened the halfway house system and other alternative means of punishment. To view the court's sentence as punishment for returning is to ignore the fact that Rivera *chose* to commit the crime. It is not the court or the penal system that has placed him in this predicament, it is the exercise of his own free will. Further, the district court did reward Rivera for returning voluntarily by sentencing him at the bottom of the Guidelines range.

Finally, Rivera argues that his sentence is unreasonable because it is the same or greater than sentences meted out to other defendants in our Circuit who escaped prison under conditions he characterizes as more egregious than his. Of the three cases Rivera cites as anecdotal evidence, however, two did not involve the application of the career offender statute and are thus inapposite in terms of the explicit policy considerations set forth by Congress. *See United States v. King*, 338 F.3d 794 (7th Cir. 2003); *United States v. Stalbaum*, 63 F.3d 537 (7th Cir. 1995). In the third case, *United States v. Waagner*, the appellant did not challenge the length of his term, but the district court's findings of relevant conduct, instead. *See* 319 F.3d 962, 966 (7th Cir. 2003) (upholding finding that defendant possessed firearms "in connection with" crimes of violence).

These cases provide a poor foundation upon which to build a challenge to the reasonableness of his sentence.

While Judge Gettleman's thorough consideration of each issue at sentencing did yield seemingly contradictory language in the record, his findings in support of the properly calculated 37-month term were unequivocal. Rivera's appeal fails to demonstrate unreasonableness, and thus, his sentence is AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*