In the

# United States Court of Appeals

## For the Seventh Circuit

No. 06-1410

UNITED STATES OF AMERICA,

*Plaintiff-Appellant,*

*v.*

MARK L. REPKING,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:05-CR-30128-001-MJR—**Michael J. Reagan**, *Judge.*

ARGUED SEPTEMBER 12, 2006—DECIDED NOVEMBER 7, 2006

Before COFFEY, ROVNER, and EVANS, *Circuit Judges.*

PER CURIAM. Mark Repking, the president of a federally insured bank, used his position to misappropriate bank funds for himself and his friend. He pleaded guilty to making false entries in the bank's records, *see* 18 U.S.C. § 1005, and to filing a false tax return, *see* 26 U.S.C. § 7206(1). Despite an advisory guidelines range of 41 to 51 months' imprisonment, and the government's recommendation of 24 months to reflect Repking's substantial assistance in the prosecution of his friend, the district court ultimately sentenced him to just one day of imprisonment, a total of three years' supervised release, and a $100,000 fine. As special conditions of his supervised release, the court ordered that Repking serve the first six months on home

confinement and perform 900 hours of community service. The government now appeals, arguing that the sentence is unreasonably low. We vacate the sentence and remand for resentencing.

## I.

Repking founded and was president of Liberty Bank in Alton, Illinois. In September 2002, Repking drew up phony documents showing that his friend, Hank Hart, had personally borrowed $350,000 from the bank; Hart received no money at the time, but he used the "loan" documents to convince the bonding company for his construction business that he invested the "proceeds" in the business. Then in February 2003 Hart asked Repking to fabricate an account statement—backdated to December 2002—showing that Hart really had $350,000 on deposit with Liberty Bank on the statement date; Repking did so. After that Hart wanted the bank to actually fund the $350,000 "loan," but Repking said the bank could not do so at the time and encouraged Hart instead to write checks against the fictitious account balance. When Hart began overdrawing his account, Repking manipulated the bank's records to conceal the overdrafts. Those overdrafts reached more than $500,000 by March 2003, and Repking agreed to lend Hart $350,000 of his own money to help cover them. Repking did give Hart a $350,000 check drawn on the account of a defunct business Repking once operated, but it turns out that Repking had misappropriated the funds in that account from Liberty Bank. Meanwhile, ever since 1999 Repking had been skimming bank funds to pay personal expenses like furniture, meals, and improvements to his Florida vacation home that totaled more than $600,000. His failure to report his year-end bonuses and the stolen money to the IRS resulted in unreported income of $240,000 for tax years 2000

through 2002. In addition, Liberty Bank later discovered that Repking had been accepting funds from bank customer Amrutbhai Patel and issuing cashier's checks in amounts under $10,000 as directed by Patel. This pattern had continued from April 2000 through June 2003, and in one eight-month period Repking had issued 36 checks totaling $168,366. According to the probation officer, the "timing and the amounts of the cashier's checks were indicative of evading reporting requirements."

When the bank became aware of the government's investigation, Repking resigned. He then entered into a plea agreement and cooperated with investigators in exchange for the possibility of a reduced sentence under U.S.S.G. § 5K1.1. In their plea agreement, signed after *United States v. Booker*, 543 U.S. 220 (2005), the parties began with a calculation of the guidelines range for Repking's violation of 18 U.S.C. § 1005, since it was the more serious count. They determined his initial offense level to be 20, *see* U.S.S.G. § 2B1.1(b)(1)(H), and then added two levels for the employment of sophisticated means, *see id*. § 2B1.1(b)(1)(8)(C), and one level for Repking's role in the offense, *see id*. § 3B1.3. The government anticipated that Repking's guilty plea would entitle him to a three-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility, bringing the total offense level to 21. With a criminal history of I, the parties calculated an advisory guidelines range of 37 to 46 months' imprisonment. The parties also agreed that the fine imposed should be $25,000, that no restitution need be awarded because Repking had settled with the bank, and that he would forfeit $75,000 in "proceeds."

The presentence investigation report reflects a multiple-count adjustment not considered in the plea agreement, bringing the probation officer's calculation of Repking's total offense level to 22 with a corresponding imprisonment range of 41 to 51 months. Although the parties stipulated only to losses of $617,314, the probation officer's investiga-

tion turned up a figure of $976,046, not counting the Patel cashier's checks. Repking did not object to the presentence investigation report, but he did file a sentencing memorandum requesting a shorter prison sentence based primarily on his charitable contributions in the community. He attached letters from family, friends, and the charitable organizations he helped. Repking requested a nominal sentence of imprisonment (such as one day) plus a period of supervised release beginning with home confinement and suggested that his sentence include community service. This was despite his promise in the plea agreement "not to seek a downward departure from the Guidelines" except for substantial assistance under § 5K1.1.

Based on what it characterized as Repking's substantial assistance, the government filed a motion under § 5K1.1 and recommended a below-range sentence of 24 months along with the $25,000 fine the parties had negotiated in the plea agreement. According to the government, Repking's substantial assistance included his early cooperation with investigators concerning his own criminal conduct, his assistance in the prosecution of Hart, the information he provided in an unrelated tax investigation, his consent to be barred from FDIC participation (which could have happened anyway by order of the Board of the Federal Deposit Insurance Corporation, *see* 12 U.S.C. § 1818(e)), his agreement to pay a $25,000 fine, his agreement to forfeit $75,000 in "proceeds" from his § 1005 violation, and his entry into a settlement with Liberty Bank that had "made the bank whole." Judge Reagan granted the motion but did not explain why or whether he agreed that Repking's assistance warranted a reduction to 24 months.

Instead, Judge Reagan asked Repking why he committed these crimes when he apparently had plenty of money. Repking—who reported total income of $1.7 million between 2000 and 2004, and a net worth of $2 million at the

end of 2005—responded that after much reflection he realized success came to him too early in life and that he had "a problem pleasing people." He discussed how he came from a small farming community where his family knew little about success. He admitted making mistakes and said he took full responsibility for his actions.

Judge Reagan prefaced his imposition of the sentence by remarking that Repking's case fell within the rare five percent of cases for which neither common sense nor a law degree were helpful. Acknowledging his duty to consider the factors under 18 U.S.C. § 3553(a), Judge Reagan began a statement of his reasons and explained that he did not believe there was a need to protect the public from Repking, that Repking had done unspecified "good works" before the government "circled its wagons," and that there was no need to rehabilitate him or deter him from committing future crimes. The judge recognized that Repking had made restitution, was going to forfeit $75,000, and had extraordinary support from the community. Judge Reagan noted that Repking would not only be barred from certain jobs after he became a convicted felon, but that he would also carry the stigma of being a convicted felon heavier than most. The judge disclosed that, while initially he planned to impose a harsher sentence, Repking's allocution had changed his mind. Judge Reagan recognized that Repking was statutorily ineligible for probation, *see* 18 U.S.C. §§ 1005, 3559(a)(2), 3561(a)(1), (3), but thought that just punishment for Repking would be to hit him in the pocketbook because his crime was money-motivated. Despite this oral list of reasons, Judge Reagan's written statement acknowledges only the § 5K1.1 motion as a basis for the sentence he ultimately imposed. That sentence consists of time served (the day Repking was arrested and released on bond), supervised release of three years on the § 1005 count and one year to run concurrently on the tax count, home confinement of six months (as part of supervised release),

900 hours of community service (as part of supervised release), and a $100,000 fine. The parties agreed to an order of forfeiture of $75,000, which was entered with the judgment.

## II.

On appeal the government argues in its brief that a sentence including one day of imprisonment is unreasonable for a defendant whose properly calculated guidelines range is 41 to 51 months. Repking takes issue with using the guidelines range for comparison; his position is that the government is stuck with its recommendation of 24 months. The government conceded at oral argument that its recommendation of 24 months is the proper point of comparison, and although we note that in the plea agreement Repking agreed not to seek a below-range sentence, the government has never held him to that concession and in fact remained silent at sentencing when Repking presented his arguments for mitigation.

In determining whether to affirm a sentence, we ask whether the sentence is both supported by adequate reasons and substantively reasonable. *See United States v. Wallace*, 458 F.3d 606, 609 (7th Cir. 2006); *United States v. Castro-Juarez*, 425 F.3d 430, 433 (7th Cir. 2005). Here, the district court granted the government's motion for a reduced sentence under U.S.S.G. § 5K1.1 and also provided reasons with reference to 18 U.S.C. § 3553(a) for giving Repking a term of imprisonment below the guidelines range. Part of our problem in reviewing this sentence is that the court did not explain why it granted the § 5K1.1 motion or how much of the reduced sentence is attributable to Repking's substantial assistance as opposed to the other reasons the court provided. Knowing what effect the government's motion had on the sentence the judge arrived at would be helpful in

evaluating the reasonableness of the sentence imposed; if the court gave greater weight to Repking's assistance, that makes its other stated reasons for imposing the sentence less significant, but if the court gave less weight to the assistance, its other stated reasons become more significant. Although we can review the district court's written statement of reasons in addition to its oral ones, *United States v. Baker*, 445 F.3d 987, 991-92 (7th Cir. 2006), to do so is unhelpful here; Judge Reagan's sole written reason for imposing the below-range sentence was the government's § 5K1.1 motion.

Our task, then, is to decide whether the district court's oral reasons are enough to justify the sentence imposed. The government in passing characterizes the term of imprisonment as an end-run around the prohibition on probation-only sentences for Repking's violations. *See* 18 U.S.C. § 3561(a). And imposing a prison sentence of one day does come close to "making a mockery out of the statutory" prohibition against a probation-only sentence. *See United States v. Crisp*, 454 F.3d 1285, 1290 (11th Cir. 2006) (opining that five-hour term of imprisonment might be end-run around prohibition against probation-only sentences, if government had made the argument). The government, though, is more concerned here that the court went below the guidelines range by 99%. But we recently declined to assess reasonableness in terms of percentages. *See Wallace*, 458 F.3d at 613. Instead, the standard is whether the district court's explanation is sufficiently proportional to the extent of the variance from the guidelines range; in other words, "the greater the deviation, the more compelling the district court's explanation must be." *Id.*; *see also United States v. Dean*, 414 F.3d 725, 729 (7th Cir. 2005); *United States v. Jordan*, 435 F.3d 693, 696-97 (7th Cir. 2006).

Here, Judge Reagan noted the absence of any need to protect the public from Repking, *see* 18 U.S.C. § 3553(a)(2)(C); the need to deter others, but not Repking,

from similar conduct, *id.* § 3553(a)(2)(B); the statutory command to provide just punishment, *id.* § 3553(a)(2)(A); the relevance of circumstances particular to Repking, like his "extraordinary" charitable works, *id.* § 3553(a)(1); and the pre-charge payment of restitution, *id.* § 3553(a)(7). Although a sentencing court need not comprehensively analyze all of the § 3553(a) factors, the judge must at least "articulate the factors that determined the sentence that he has decided to impose." *Dean*, 414 F.3d at 729-30. And we think Judge Reagan sufficiently considered the § 3553(a) factors. We are not convinced, however, that the court's consideration of those factors resulted in a sentence that is reasonable.

Our first concern is the district court's consideration of Repking's charitable works. The government argues that the court's focus on charitable works violates the policy statement provided in the advisory sentencing guidelines. This is an overstatement. True, the guidelines do provide that a defendant's charitable works are "not ordinarily relevant," *see* U.S.S.G. § 5H1.11, but consideration of those works is not specifically prohibited, especially in a post-*Booker* world. *See Wallace*, 458 F.3d at 608-09, 613; *United States v. Long*, 425 F.3d 482, 487-88 (7th Cir. 2005); *United States v. Boscarino*, 437 F.3d 634, 638 (7th Cir. 2006) ("*Booker* turns rules into standards."). And though other circuits have required sentencing courts to address policy statements that prohibit or discourage consideration of certain factors before deciding that those policy statements do not apply, *see United States v. Duhon*, 440 F.3d 711, 717 & n.4 (5th Cir. 2006) (collecting cases), we have gone only so far as to vacate sentences where the district court disagreed with judgments firmly made by the Sentencing Commission, *see Wallace*, 458 F.3d at 612-13 (holding that sentencing court's measurement of culpability by actual, rather than intended, loss was inappropriate

since guidelines "already made the judgment that intended loss is what counts"); *United States v. Miller*, 450 F.3d 270, 275 (7th Cir. 2006) (holding that sentencing court may not replace legislative choice of ratio between crack and powder cocaine with its own). But we have held that charitable works must be exceptional before they will support a more-lenient sentence, for, as the Third Circuit has recognized, "it is usual and ordinary, in the prosecution of similar white-collar crimes involving high-ranking corporate executives . . . to find that a defendant was involved as a leader in community charities, civic organizations, and church efforts." *See United States v. Cooper*, 394 F.3d 172, 176-77 (3d Cir. 2005) (internal quotations omitted). Although consideration of Repking's charitable works is reliance on a factor that is permitted, though discouraged, by the policy statements, we do not share the district court's view that Repking's charitable works were so extraordinary that they should be given weight despite the contrary view of the Sentencing Commission—especially since charitable works are entirely consistent with a bank's business development plan.

We are also concerned by the extent to which Judge Reagan relied on Repking's representation that he made restitution. The parties and the court mentioned that Repking had paid everything back, but the record is silent about what that means. The bank originally submitted a loss amount exceeding $1 million, but all the record reflects is that Repking sold the bank some of his stock in the bank and that they came to a "complex and comprehensive settlement agreement." Even assuming that he did pay everything back, he would have been required to do so anyway, *see* 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii) (making order of restitution mandatory for offenses against property committed by fraud or deceit), so we think this factor does little to support the below-range sentence. (Neither does Repking's consent to the forfeiture order

support a below-range sentence because that also was statutorily required. *See* 18 U.S.C. § 982(a)(2)(A).) Moreover, we recognized pre-*Booker* that the repayment of stolen funds figures into the downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1. *See United States v. Bean*, 18 F.3d 1367, 1369 (7th Cir. 1994). And we have now held, both before and after *Booker*, that only extraordinary efforts to make restitution support a reduced sentence. *See United States v. Filipiak*, No. 05-4572, 2006 WL 2987098, at *2 (7th Cir. Oct. 20, 2006); *Bean*, 18 F.3d at 1369.

In the end, although Judge Reagan did recite and apply the § 3553(a) factors, the sentence imposed cannot stand. The factors Judge Reagan gave the most attention to—Repking's charitable works and restitution—were overstated, and the other reasons the judge gave—including the social stigma of being a convicted felon and the bar on obtaining federal jobs—are normal incidents of committing bank fraud. The ordinariness of Repking's case makes it more like *United States v. Wallace*, in which we vacated the probation-only sentence given for a defendant who faced a guidelines range of 24 to 30 months for a fraud offense that involved $400,000 of intended loss, 458 F.3d at 607, 614, and *United States v. Crisp*, in which the Eleventh Circuit held that the district court provided insufficient reasons to justify a five-hour term of imprisonment for a defendant who defrauded a small bank out of close to $500,000, 454 F.3d at 1290. *See also United States v. Godding*, 405 F.3d 125, 125, 127 (2d Cir. 2005) (expressing concern that one-day term of imprisonment did not reflect magnitude of theft of nearly $366,000). As we said at oral argument, we leave open the possibility that a one-day sentence of imprisonment might be justifiable for a defendant who rivals Robin Hood; but Repking, a millionaire who stole for himself and his friends, is not that defendant. We therefore VACATE the sentences on each count and REMAND for resentencing.

No. 06-1410                                                    11

A true Copy:

    Teste:

_____
*Clerk of the United States Court of
Appeals for the Seventh Circuit*