[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12304

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 7, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00403-CR-BE-S

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

MICHAEL A. CRISP,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(July 7, 2006)**

Before BIRCH, CARNES and BRUNETTI*, Circuit Judges.

CARNES, Circuit Judge:

---

* Honorable Melvin Brunetti, United States Circuit Judge for the Ninth Circuit, sitting by designation.

As the comptroller of a corporation, Michael Crisp participated in a fraudulent scheme that bilked a bank out of nearly half a million dollars. After being caught, he pleaded guilty to making false statements to a financial institution and helped the government prosecute a co-conspirator. Grateful, the government moved for a substantial assistance departure. The district court exceeded the limits of the government's gratitude by departing to an offense level below the one that it had recommended.

The court then went even further, using its post-Booker authority to dip below the post-departure guidelines range, and sentenced Crisp to probation. The government objected, pointing out that given the offense of conviction the law requires incarceration. Persuaded of the legal correctness of the government's position, although not caught up in the spirit of it, the court modified the sentence to one of incarceration, or something meant to resemble it. The court sentenced Crisp to five hours in custody of the Marshals. Crisp had reason to be grateful. The government did not. This is its appeal. We reverse.

**I.**

Crisp was comptroller for Southern Pride Contractors, Inc., a construction company based in Birmingham, Alabama. He was supervised by John G. Grant, Jr., the company's president and principal owner. In late 2002 and early 2003, at

2

Grant's direction, Crisp prepared false financial statements overstating the company's accounts receivable, and he provided them to Covenant Bank on six separate occasions. The bank, which had extended a $500,000 line of credit to Southern Pride, relied on those reports in continuing to extend credit to the company. Southern Pride did not repay the credit line, and the loss to the bank was over $480,000.

For his role in the scheme to defraud the bank, Crisp was charged with one count of violating 18 U.S.C. § 1014. He pleaded guilty to it. The United States Probation Office prepared a presentence investigation report that assigned Crisp a criminal history category of I and calculated his total offense level to be 17, resulting in a sentencing range of 24–30 months. See United States Sentencing Guidelines Ch. 5 Pt. A (Nov. 2002). Crisp did not object to any part of the PSI.

The government filed a motion for a downward departure pursuant to U.S.S.G. § 5K1.1 based on Crisp's substantial assistance in its prosecution of Grant. The government's motion indicated that Crisp's assistance had included: confessing to his crime upon being confronted by the Federal Bureau of Investigation, agreeing to several interviews by FBI agents and government prosecutors, participating in a monitored telephone conversation with Grant "which materially aided the government's case against Grant," and testifying for

3

the prosecution at Grant's trial about their scheme to defraud the bank. The government represented that "Crisp's testimony was crucial in the trial of Grant." It recommended "that the Court depart from the recommended range by 50%, which results in a guideline range of 12 to 15 months imprisonment," which it referred to as level 13, and "that the defendant be sentenced at the low end" of that range—to 12 months.

Crisp was sentenced on March 23, 2005. Hearing no objection to it, the court adopted the PSI's calculation of the applicable pre-departure guidelines range of 24–30 months. Crisp and his wife made statements to the court, and his counsel and the government discussed briefly the assistance Crisp had provided in the prosecution of Grant.

Before imposing its sentence, the court stated:

> Let me say, Mr. Crisp, that I find that there is no excuse for your participation in this matter with Mr. Grant. It's obvious that you knew it was wrong from the beginning. And without your participation in this scheme, for lack of a better word, it could not have occurred.
>
> So I certainly do not want to minimize the wrongful conduct in which you engaged.
>
> However, I am, as is the government, appreciative of your cooperation with the government in bringing Mr. Grant to trial and to a conviction of him for his role in this scheme. But it certainly was for his benefit, not for yours.
>
> I have taken all of those things into consideration.

4

I have also taken into consideration the amount of restitution that is due to this bank . . . . [T]he smaller banks really feel a loss such as this more so than larger banks.

And I am most concerned that justice really requires restitution in this case. And [18 U.S.C.] Section 3553(a)(7) directs the court to consider the need to provide restitution to any victims in coming up with the appropriate punishment, and I certainly am considering that in my determination as to the appropriate punishment.

With all of those factors taken into consideration, the court finds that the government's motion for downward departure pursuant to Section 5K1.1 and [18 U.S.C.] Section 3553(e), based on the defendant's substantial assistance to the government, should be granted.

As I said, in taking into account all of those various factors that the court has to consider, the court finds that the appropriate guideline level for consideration should be level ten, which when combined with the criminal history category of one, creates a guideline range of six to twelve months . . . .

After arriving at a post-departure range of 6–12 months, the court sentenced Crisp to five years probation with 12 months in-home confinement. There was to be no incarceration.

The court believed that its sentence of probation was "a reasonable one based upon all the factors contained in [18 U.S.C.] Section 3553(a)." It specifically stated "that the sentence reflects the seriousness of the offense, provides just punishment, affords adequate deterrence and adequately protects the

public." The court weighed most heavily "the need to provide restitution to the bank" explaining that "[i]f the court were to impose even a short period of imprisonment, . . . the goal of restitution would be thwarted because it would adversely affect [Crisp's] ability to earn a living so as to be able to make restitution payments."

The court then ordered Crisp to pay restitution in the amount of $484,137.38, and found that he would be jointly and severally liable with Grant for that amount if Grant were ordered to pay restitution. Crisp was instructed to pay the restitution amount "in full no later than the end of [his] term of probation." The court explained to Crisp that "the main reason" it had imposed the maximum term of probation was "to allow [him] that time to pay off the restitution amount." No fine was imposed, because the court found that Crisp was unable to pay both a fine and restitution and, in its words, "restitution takes priority over the imposition of a fine."

The government objected to the court's initial probationary sentence as illegal because probation may not be imposed for a Class B felony, and a violation of § 1014 is a Class B felony. See 18 U.S.C. §§ 1014, 3559(a)(2), 3561(a)(1). The court later reconvened and modified its sentence of Crisp as follows: "I am ordering the defendant to serve five hours in the custody of the United States

6

Marshal, that term of custody preferably will be served today or you can work out a time with the marshal preferably some time this week." The court also imposed as part of the sentence a five-year term of supervised release. The government objected to the final five-hour sentence as unreasonable, labeling it "farcical."

## II.

The district court arrived at the five-hour incarceration term of the sentence after following a two-step process. First, it granted the government's § 5K1.1 motion and departed from the PSI's sentencing guidelines range of 24–30 months to a range of 6–12 months, instead of the 12–15 months the government had recommended. We review de novo the district court's interpretation of any part of the guidelines, including § 5K1.1, United States v. McVay, 447 F.3d 1348, 1352–53 (11th Cir. 2006), but we review the extent of a departure only for abuse of discretion, id. at 1353.

The second step in the court's sentencing decision was, after consulting the factors set out in 18 U.S.C. § 3553(a), to vary from the post-departure guidelines range of 6–12 months down to the final sentence of five hours. We review that aspect of the sentence, the only part at issue here, for reasonableness. United States v. Booker, 543 U.S. 220, 261, 125 S. Ct. 738, 765–66 (2005); United States v. Crawford, 407 F.3d 1174, 1179 (11th Cir. 2005).

7

**III.**

Section § 5K1.1 authorizes a court to depart from the sentencing guidelines "[u]pon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1. That guideline contains a list of factors for sentencing courts to consider in making a substantial assistance departure, all of which relate to the assistance the defendant provided:

> (1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;
>
> (2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;
>
> (3) the nature and extent of the defendant's assistance;
>
> (4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;
>
> (5) the timeliness of the defendant's assistance.

U.S.S.G. § 5K1.1(a)(1)—(5).

Although that list of factors is preceded by language indicating that they are not exclusive, we have held that "[w]hen . . . a district court grants a downward departure under U.S.S.G. § 5K1.1 . . ., the sentence reduction may be based only on factors related to the defendant's substantial assistance." United States v. Luiz, 102 F.3d 466, 469 (11th Cir. 1996). In other words, in meting out a substantial

8

assistance departure the court may consider factors outside the § 5K1.1(a) list, but only if they are related to the assistance rendered. See U.S.S.G. § 5K1.1 cmt. backg'd (indicating that the focus is on the "nature, extent, and significance" of the defendant's assistance to the government).

Because a substantial assistance departure is to be about assistance and nothing else, "the sentencing court [may] not permissibly consider the sentencing factors announced in 18 U.S.C. § 3553(a) when exercising its discretion in deciding whether and how much to depart" under § 5K1.1. United States v. Davis, 407 F.3d 1269, 1271 (11th Cir. 2005). One of the § 3553(a) factors is restitution. See 18 U.S.C. § 3553(a)(7) ("The court, in determining the particular sentence to be imposed, shall consider . . . the need to provide restitution to any victims of the offense."). The reason that restitution, like the other § 3553(a) factors, may not be considered in determining the extent of a substantial assistance departure is that it, like the other § 3553(a) factors, has nothing to do with the assistance the defendant rendered.

In deciding how much to depart on substantial assistance grounds, the district court not only considered the need for restitution, it gave that factor controlling weight. The court did not discuss any of the § 5K1.1(a) assistance-related factors—not the significance and usefulness of the assistance; not the

9

truthfulness, completeness, or reliability of the information or testimony provided; not the nature and extent of the assistance; not any injury, danger, or risk to the defendant resulting from the assistance; and not the timeliness of it. Instead, after indicating that it had considered Crisp's cooperation, the court said that it had "also taken into consideration the amount of restitution that is due to this bank" and explained that it was "most concerned that justice really requires restitution in this case." The court noted that restitution is enumerated in § 3553(a)(7) as an appropriate factor to consider at sentencing. It is, of course, but it is not to be considered when calculating the extent of a § 5K1.1(a) departure. None of the § 3553(a) factors are. Davis, 407 F.3d at 1271.

The court's error in allowing the need for restitution to skew the substantial assistance calculation is by itself enough to require that we vacate the sentence and remand for resentencing. See McVay, 447 F.3d at 1355. There is another reason, as well. Even if the district court had not based the extent of the § 5K1.1(a) departure on an improper consideration, its leap from the post-departure guidelines range of 6–12 months down to five hours would still have to be corrected.

**IV.**

In deciding upon a sentence, a court is directed by 18 U.S.C. § 3553(a) to consider the factors listed in that subsection. Our review of the reasonableness of the sentence in light of those factors is deferential. United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005). There is, however, a difference between deference and abdication. We do review the sentence, and in doing so we evaluate whether the sentence imposed serves the purposes reflected in § 3553(a). Id. If it does not, the sentence is an unreasonable one. In any given case there will be a range of sentences that are reasonable and the district court gets to pick within that range. Id. But there are also sentences outside the range of reasonableness which the district court may not impose. See id.

After pronouncing its initial sentence of probation, the district court indicated that it had considered several of the factors listed in § 3553(a). It said "that the sentence reflects the seriousness of the offense, provides just punishment, affords adequate deterrence and adequately protects the public." However, the court's primary concern, above all others, was restitution. It explained its motivation: "If the court were to impose even a short period of imprisonment, . . . the goal of restitution would be thwarted because it would adversely affect [Crisp's] ability to earn a living so as to be able to make restitution payments."

11

Although the court did not say so, its reasoning behind the probationary sentence obviously carried over to the five-hour sentence it imposed after learning that 18 U.S.C. § 3561(a) required some incarceration.

In a burst of startled candor at the sentence hearing, the government "with all due respect" told the district court that the five-hour sentence was "farcical." Although we are sympathetic with that notion, we need not go that far to decide that the sentence is unreasonable. The district court obviously imposed the five-hour sentence, to be served at a convenient time, in order to evade the strictures of the law forbidding a probationary sentence for a crime as serious as the one Crisp had committed. While a five-hour sentence is not probation, neither is it a real sentence of incarceration. There is a point at which the length of the incarceration is short enough to cross the line into no incarceration, and we would be inclined to say that five hours crosses that line, if the government had argued that the sentence violated § 3561(a). Otherwise, courts could impose sentences of five minutes or five seconds, making a mockery out of the statutory command. Because the government does not advance the argument that the sentence violated § 3561(a), however, we will not decide that issue. Instead, we confine ourselves to the reasonableness issue the government has raised.

12

For a number of reasons, we do not share the district court's view that a five-hour sentence is reasonable in this case. The scheme that Crisp engaged in was a serious one. It extended over a period of nearly eight months. The crime he committed is classified as a Class B felony. The loss Crisp and his co-conspirator inflicted on the victim totaled more than $480,000. The victim was a small, family-owned bank which the district court acknowledged was particularly vulnerable: "[T]he smaller banks really feel a loss such as this more so than larger banks." The purpose of 18 U.S.C. § 1014 is to protect financial institutions, and the Federal Deposit Insurance Corporation, against the risk of loss from frauds like this one. See United States v. Stoddart, 574 F.2d 1050, 1053 (10th Cir. 1978); United States v. Lentz, 524 F.2d 69, 71 (5th Cir. 1975); United States v. Pavlick, 507 F. Supp. 359, 362–65 (M.D. Pa. 1980).

For such a serious offense, however, Crisp did not receive so much as a slap on the wrist—it was more like a soft pat. The sentence essentially converts a theft by fraud into a loan that is unlikely to ever be repaid. The court gave Crisp five hours for a crime that caused $484,137.38 in harm. That equates to $96,827.48 per hour or $1,613.79 per minute served in custody. The sentence does not reflect the seriousness of the crime, promote respect for the law, and provide just punishment

for the offense, as § 3553(a)(2)(A) requires, nor does it afford adequate deterrence to criminal conduct, as § 3553(a)(2)(B) requires.

In deciding on a sentence, district courts should consider the policies behind the applicable guidelines provision. 18 U.S.C. § 3553(a)(5). The commentary to U.S.S.G. § 2B1.1, which applies to Crisp's 18 U.S.C. § 1014 felony violation, states:

> The Commission has determined that, ordinarily, the sentences of defendants convicted of federal offenses should reflect the nature and magnitude of the loss caused or intended by their crimes. Accordingly, along with other relevant factors under the guidelines, <u>loss serves as a measure of the seriousness of the offense and the defendant's relative culpability and is a principal factor in determining the offense level under this guideline.</u>

U.S.S.G. § 2B1.1 cmt. backg'd (emphasis added). The court's sentencing theory turned that policy on its head. The more loss a defendant has caused, the greater will be the amount of restitution due, and the greater the incentive for a court that places the need for restitution above all else to shorten the sentence in order to increase the time for the defendant to earn money to pay restitution. Therefore, the more loss a criminal inflicts, the shorter his sentence. That approach cannot be deemed reasonable.

14

We do not mean to imply that there is even a fanciful hope that Crisp can meet the restitution obligations imposed on him. The PSI indicated that Crisp's financial condition would prevent him from making much of a dent in his $484,137.38 obligation to the bank. At the time of sentencing, Crisp had a net worth of $6,973 and monthly cash flow, net of living expenses, of just $954. Applying all of Crisp's net worth to the restitution obligation and even assuming that his cash flow remains the same, and that he will devote all of it to restitution, it would take Crisp (age 46 at sentencing) 41 years to pay off the amount of restitution he owes. His five-hour sentence and five years of supervisory release will be over long before then.

As the Eight Circuit recently said: "An extraordinary reduction must be supported by extraordinary circumstances." United States v. Dalton, 404 F.3d 1029, 1033 (8th Cir. 2005) (discussing a § 5K1.1 departure). The circumstances of this case are not out of the ordinary at all, much less extraordinary enough to justify the extremely lenient sentence the court imposed. Cf. United States v. Dean, 414 F.3d 725, 729 (7th Cir. 2005) (adopting a rule that "the farther the judge's sentence departs from the guidelines sentence (in either direction-that of greater severity, or that of greater lenity), the more compelling the justification based on factors in section 3553(a) that the judge must offer"); accord United

15

States v. Smith, 445 F.3d 1, 4 (1st Cir. 2006); United States v. Moreland, 437 F.3d 424, 434 (4th Cir. 2006); United States v. Smith, 440 F.3d 704, 707 (5th Cir. 2006); United States v. McMannus, 436 F.3d 871, 874 (8th Cir. 2006).

Other courts have found that a district court's "unjustified reliance upon any one [§ 3553(a)] factor is a symptom of an unreasonable sentence." United States v. Rattoballi, __ F.3d __, __, 2006 WL 1699460, at *8 (2d Cir. June 21, 2006); accord United States v. Ture, __ F.3d __, __, 2006 WL 1596754, at *5 (8th Cir. June 13, 2006); United States v. Hampton, 441 F.3d 284, 288–89 (4th Cir. 2006); see also United States v. Cage, __ F.3d __, __, 2006 WL 1554674, at *9 (10th Cir. June 8, 2006); United States v. Givens, 443 F.3d 642, 646 (8th Cir. 2006). That is what happened in this case. The district court focused single-mindedly on the goal of restitution to the detriment of all of the other sentencing factors. An unreasonable approach produced an unreasonable sentence.

## V.

For these reasons, we vacate Crisp's sentence and remand the case to the district court for resentencing in a manner consistent with this opinion.

**VACATED AND REMANDED.**