[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-11524
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 19, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 08-80108-CR-KLR

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FAUSTO JAIMES-SANTIBANEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 19, 2009)

Before BIRCH, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Defendant-appellant, Fausto Jaimes-Santibanez, appeals his sentence for

being an unlawful alien in possession of a firearm. He argues that the upward departure that the district court granted, based on a finding that he aided and abetted an attempted murder, was not supported by the facts and resulted in an excessive sentence. We AFFIRM.

## I. BACKGROUND

On 27 July 2008, Jaimes-Santibanez and Servando Cepeda drove to the home of Jesus Lopez and had a dispute over money owed to Lopez. R2 at 7, R3 at 60. Jaimes-Santibanez drove the vehicle past Lopez's house several times, shouting at Lopez. R2 at 7. As the confrontation escalated, someone in the car shot Lopez in the leg. Jaimes-Santibanez then drove away. Id.

Jaimes-Santibanez was arrested at one of his homes. Id. at 8. During the arrest, deputies found a loaded semiautomatic .22 caliber handgun wrapped in a shirt next to Jaimes-Santibanez. Id. Police confirmed that Lopez was shot with a .22 caliber firearm. Id. at 9. In a post-Miranda interview, Jaimes-Santibanez told deputies that he was a United States citizen who had been born in Mexico. Id. at 8. This was false; he never had been a United States citizen and remains a citizen of Mexico. Id.

Jaimes-Santibanez was initially charged with aggravated battery with a firearm and with carrying a concealed firearm. Id. at 9. When federal agents

2

learned of the arrest, they contacted Immigration and Customs Enforcement ("ICE"), which reviewed his file and found that he had previously been deported multiple times. Id. A certificate of nonexistence of records establishes that neither the Attorney General nor the Secretary of the Department of Homeland Security expressly consented to having Jaimes-Santibanez reapply for admission to the United States; he therefore was in the country illegally on 27 July 2008. Id.

Jaimes-Santibanez pleaded guilty to being an unlawful alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5)(A), to unlawful re-entry into the United States, in violation of 8 U.S.C. § 1326(a), and to falsely representing himself to be a United States citizen, in violation of 18 U.S.C. § 911.

Deputy Siew, a deputy sheriff and medic of 20 years, testified at the sentencing hearing that, when he found Lopez after the shooting, Lopez was unconscious, with very slow respiration and a fading pulse. R3 at 5-6. Deputy Siew further testified that, if he had arrived at the scene a minute or two later, Lopez would have died. Id. at 7. Detective Jennifer Degidio testified that police videotaped an interview with Jaimes-Santibanez, during which he admitted that he drove the vehicle but claimed that the other person in the vehicle, Servando Cepeda, shot Lopez. Id. at 26-27. Jaimes-Santibanez stated in the interview that he reloaded the gun after Cepeda shot at Lopez a number of times. Id. at 27. He

3

further stated that, although he did not shoot Lopez, he had wanted to. Id. at 28. Detective Degidio further testified that, during the interview, Jaimes-Santibanez admitted that he had a plan for Cepeda to hide in the bed of the truck with the gun while the two men drove by Lopez's house. Id. at 29. Jaimes-Santibanez stated that he told Cepeda "we'll see what happens" and that, if Lopez "attempted to do something," Cepeda would shoot him. Id. According to Jaimes-Santibanez, Lopez was swinging a machete and hitting the truck as Jaimes-Santibanez drove by, while shouting that he was going to kill him. Id. at 38. Jaimes-Santibanez told Detective Degidio that Cepeda said, "I'm going to get a gun and get in the back of the truck and if he waves the machete again, I'm going to shoot him," to which Jaimes-Santibanez responded, "go ahead." Id. at 40-41.

On the basis of the discharge of the weapon, the severity of the injury, and the criminal history of Jaimes-Santibanez (including multiple illegal entries into the United States and a conviction for driving under the influence), the government moved for an upward departure on the charge of firearm possession by an illegal alien. Id. at 59-61. The court found that, even though he had not shot Lopez himself, Jaimes-Santibanez had aided and abetted an attempted murder. Id. at 66, 77. The court granted the upward departure under United States Sentencing

4

Guideline ("U.S.S.G.") § 2A2.1[1] and sentenced him to 87 months of imprisonment as to this offense.[2] Id. at 74.

On appeal, Jaimes-Santibanez contends that there was no evidence that he intended to kill Lopez or that he acted with extreme recklessness. He submits that he should have been sentenced under the guideline for aggravated assault, rather than for attempted murder.

## II. DISCUSSION

We review the district court's upward departure for abuse of discretion. United States v. Crisp, 454 F.3d 1285, 1288 (11th Cir. 2006). Attempt crimes require proof that the defendant (1) acted with the state of mind required for the commission of the crime and (2) made an overt act toward commission of that crime. See United States v. Plummer, 221 F.3d 1298, 1303 (11th Cir. 2000). Jaimes-Santibanez does not argue the lack of a "substantial step" here, id., so our inquiry hinges on the state of mind prong.

The requisite intent for attempted murder is "malice aforethought." United

---

[1]Pursuant to the attempted murder enhancement under U.S.S.G § 2A2.1, the court set Jaimes-Santibanez's total offense level at 27. See U.S.S.G. § 2A2.1(a)(2)(Nov. 2008). Combined with his criminal history category, the advisory sentencing guideline range was seventy to eighty-seven months of imprisonment.

[2]Jaimes-Santibanez received concurrent sentences of twenty-four months of imprisonment as to count two (unlawful re-entry into the United States) and thirty-six months of imprisonment as to count three (false representation of United States citizenship).

States v. Campa, 529 F.3d 980, 1009 (11th Cir. 2008) (citations omitted); 18 U.S.C. § 1111(a). We define malice aforethought as "an intent, at the time of a killing, willfully to take the life of a human being, or an intent willfully to act in callous and wanton disregard to the consequences of human life." United States v. McRae, 593 F.2d 700, 703-704 (5th Cir. 1979). In determining the presence of malice, the factfinder "should consider all the facts and circumstances preceding, surrounding, and following the killing as shown by the evidence in the case." Id. at 704. At the sentencing stage, the district court need not determine that a defendant is guilty of attempted murder beyond a reasonable doubt, but only by a preponderance of the evidence. See United States v. Alston, 895 F.2d 1362, 1373 (11th Cir. 1990).

The district court found that Jaimes-Santibanez had malice aforethought because he had the intent to kill: "Jaimes and Cepeda entered into an agreement that Cepeda would shoot Lopez and [] Jaimes aided and abetted the shooting of Lopez." R1-50 at 7. Though he did not fire the gun, Jaimes-Santibanez made a plan to confront Lopez with a loaded gun, provided the gun, drove the shooter to Lopez's house, reloaded the gun, and told the shooter to "go ahead" and shoot during the confrontation. Jaimes-Santibanez argues that the facts establish only that he and Cepeda intended to shoot Lopez, but not that they intended to kill him.

6

He further argues that Lopez provoked the shooting by swinging a machete at the truck. We have allowed factfinders to find malice aforethought, in the absence of explanatory or mitigating circumstances, simply from the use of a gun, which is a deadly weapon *per se*. See McRae, 593 F.2d at 704-05. Lopez's use of a machete does not negate the presence of malice here because, as the district court found, Jaimes-Santibanez "could simply have driven away." R1-50 at 7. The district court's finding of malice aforethought through intent to kill has adequate support in the record here. The district court did not abuse its discretion in sentencing Jaimes-Santibanez within the attempted murder guideline.

### III. CONCLUSION

Jaimes-Santibanez appeals the upward departure in sentencing as unsupported by the facts of his case. We conclude that the district court did not abuse its discretion in departing upward based on its finding that Jaimes-Santibanez aided and abetted an attempted murder. Accordingly, we AFFIRM the judgment of the district court.

**AFFIRMED.**

7