[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 19-12467

————————————————

D.C. Docket No. 6:18-cr-00273-CEM-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

BRYAN MATTHEW COONEY,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(February 16, 2021)

Before ROSENBAUM, LUCK, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Bryan Cooney appeals his 228-month sentence, representing a substantial

upward variance from his applicable Sentencing Guidelines range, which the district

court imposed after he pled guilty to knowingly possessing images and videos of child pornography involving a prepubescent minor. After careful review and oral argument, we affirm.

## I.    BACKGROUND

## A.    Factual Background[1]

An undercover Federal Bureau of Investigation ("FBI") agent engaged in conversation online via the internet messaging application Kik with a user known as "yolo17_cool," who stated that he was "active" with his 12-year-old daughter, which the agent interpreted as meaning sexually active. The user told the agent that he had a video of his daughter urinating and nude photos, including one of the child urinating and another of the child tied to a bed. The user also asked members of the online group of which the agent was a member if they had access to a known video of a young girl being sexually abused and tortured by an older female.

The FBI issued a subpoena to Kik and discovered that the user known as "yolo17_cool" was associated with an Internet Protocol address assigned to Cooney's home. The FBI obtained a search warrant for Cooney's home and seized his cell phone. In an interview with agents, Cooney admitted that he had a Kik account under the "yolo17_cool" username, used it to engage in role play and to

---

[1] Our description of the facts comes from the unobjected-to facts in the presentence investigation report.

2

share images of a minor, had a "panty" fetish, had downloaded child pornography on his cell phone and transferred it to a Dropbox account, and had posted to Kik nonpornographic images of a friend's 12-year-old daughter. On Kik, Cooney represented that the friend's daughter was Cooney's daughter, whom he was sexually molesting.

A forensic review of Cooney's cell phone and Dropbox account discovered multiple folders filled with images and videos depicting the rape and sexual abuse of prepubescent children. The officers also discovered a folder containing nonpornographic images of the daughter of one of Cooney's "friends" on the online platform Facebook. Cooney used these images to trade for child pornography from other Kik users, telling the users the images depicted his daughter. All told, Cooney possessed at least 200 videos and 30 images of child pornography.

## B.    Procedural Background

Cooney pled guilty to one count of knowingly possessing images and videos of child pornography involving a prepubescent minor, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). In anticipation of sentencing, the probation office prepared a presentence investigation report ("PSR"). The PSR calculated Cooney's base offense level as 18. *See* U.S.S.G. § 2G2.2(a)(1). The PSR included several enhancements, including a two-level enhancement under U.S.S.G. § 2G2.2(b)(2) because the offense involved a prepubescent minor or a child under 12 years old; a

3

four-level increase under U.S.S.G. § 2G2.2(b)(4) because the material Cooney possessed depicted sadistic or masochistic conduct, other depictions of violence, or the sexual abuse or exploitation of an infant or toddler; a two-level increase under U.S.S.G. § 2G2.2(b)(6) because the offense involved the use of a computer; and a five-level increase under U.S.S.G. § 2G2.2(b)(7)(D) because the offense involved 600 or more images of child pornography (each video was considered to have 75 images). The PSR applied a three-level reduction under U.S.S.G. § 3E1.1 because Cooney accepted responsibility for his offense, thus bringing his total offense level to 28. Cooney's criminal history category was I; this, plus a total offense level of 28, yielded a guidelines range of 78 to 97 months' imprisonment. The statutory maximum term of imprisonment was 240 months. *See* 18 U.S.C. § 2252A(a)(5)(B), (b)(2).

The PSR described Cooney's background, including that he had been employed as an emergency medical technician for several years. The PSR also discussed Cooney's reports that he was sexually molested as a minor. In particular, the PSR recounted that when Cooney was 10 years old, his mother's step-sister, who was 15 years old at the time, began living with him and his family. According to Cooney, the step-sister molested him on an ongoing basis for two years. The PSR also noted that Cooney had recently been in a relationship with R.B., who was pregnant with his child. The two were no longer in a relationship.

The probation officer included several documents along with the PSR. One was a report from Dr. Jefferey Danziger. Danziger conducted a psychiatric and psychosexual evaluation of Cooney, and based in part on Danziger's conclusion that there was "no history of a contact sexual offense, and no history of [Cooney's] ever attempting to groom or . . . meet with [a] child for inappropriate purposes," Danziger determined that Cooney presented no heightened threat of harm or danger to children or the community. Danziger opined that Cooney's child-related fetishes likely resulted from the sexual abuse he experienced as a child. As Danziger noted, Cooney had been abused by older females, including "his roughly 17-year-old cousin" and "a woman in her 30s, reportedly his mother's half-sister." Doc. 60 at 22.[2] Cooney's mother's half-sister "had him do sexual things, including oral sex, with her approximately six-year-old daughter," and Cooney "may have also, at the behest of the older woman, engaged in some sexual activity with his sister." *Id.* Danziger diagnosed Cooney with Pedophilic Disorder and no other psychiatric disorders.

Other submissions included victim impact statements in which victims of known child pornography series that Cooney possessed detailed their sexual abuse and the continuing trauma of knowing that the pornographic materials portraying them are still circulating.

---

[2] Citations in the form "Doc. #" refer to entries on the district court's docket.

The probation office also included several letters regarding two individuals with whom Cooney previously had a relationship, A.I. and her minor daughter I.G. A.I. wrote a letter to the court explaining that she believed Cooney, with whom she had worked and whom she saw as a "little brother," had molested I.G. while babysitting I.G. when she was four years old. Doc. 60-3 at 3. The last time Cooney babysat I.G., he took her across the county to a Disney Hotel, changed her into a holiday dress, and had photographs of her taken as a gift for her and A.I.

At the time, A.I. did not suspect that Cooney had molested I.G., but when I.G. was preschool aged, she developed sensory and behavioral issues consistent with sexual abuse and exploitation. A.I. confirmed that the images Cooney had shared on Kik of the girl he claimed to be his daughter came from her Facebook page. She reported that a former girlfriend of Cooney's told her that Cooney had a pair of little girl's underwear that he said belonged to I.G. And she explained her belief, based on conversations with this former girlfriend, as well as R.B., Cooney's most recent former girlfriend, and their shared colleagues, that Cooney had an ongoing obsession with and "may have actually been recently stalking" I.G. *Id.* at 6-7. A.I. asked for the maximum sentence allowable to help protect I.G. from Cooney.

A letter from I.G.'s therapist tended to corroborate A.I.'s suspicions. It explained that I.G. had experienced panic disorder, trichotillomania (pathological hair pulling), and anxiety, in addition to "multiple sensory sensitivities" including

"an unusual need to keep her vagina dry" and "discomfort with wearing underwear."

Doc. 60-1 at 1. The therapist noted "concern[] that [I.G.] was abused in the past,"

although she represented that I.G. had "never reported sexual abuse." *Id.* Also

included was a letter from A.I.'s "sexual trauma therapist," who "fe[lt] very strongly

that [I.G.'s] symptoms," as A.I. described them, "suggest she was exposed to some

form of inappropriate sexual contact." Doc. 60-2 at 1.

The PSR recommended that the district court sentence Cooney to 97 months'

imprisonment followed by 10 years of supervised release. In support, the PSR cited

the seriousness of Cooney's offense, that Cooney had used pictures of someone

else's minor daughter to obtain child pornography from others, that Cooney

"regularly babysat [I.G.] when the child was four years old," and that "[t]he child's

mother asserts the child has the behavioral symptoms of a child who has been

sexually abused." Doc. 60 at 37.

Cooney objected to the PSR's enhancements for use of a computer and

involvement of a prepubescent child. He requested a downward variance, citing his

childhood abuse and Danziger's opinion that he did not pose a threat to children or

the community. In support of his request for a variance, he included letters from his

mother, as well as several friends and former coworkers, all attesting to his good character.[3]

At the sentencing hearing, the district court overruled Cooney's objections and adopted the PSR's statements as its factual findings. The court calculated Cooney's guidelines range as 78 to 97 months' imprisonment just as the PSR had. The court noted that "[t]here have been matters submitted by the defense for the [c]ourt to consider in terms of mitigation." Doc. 88 at 7. Cooney apologized for his conduct.

The government called FBI special agent Rodney Hyre, who was assigned to a task force that investigated Cooney. Hyre and other agents executed the search warrant on Cooney's home. Hyre also interviewed R.B. (Cooney's most recent former girlfriend). R.B. stated in a recorded interview that Cooney told her he had ejaculated onto I.G. and had touched I.G.'s vagina while she was sleeping. Cooney represented to R.B. that he was actually I.G.'s stepfather and "was very involved in this little girl's life." *Id.* at 17. R.B. further stated that Cooney would have R.B. "pretend to be 12-year-old [I.G.] while they had sex. He would have her wear little girl panties, which we found at the time of the search warrant in Mr. Cooney's house." *Id.* at 16. R.B. reported that Cooney told her the underwear belonged to

---

[3] Cooney also included letters of support from R.B. and R.B.'s mother, but both had withdrawn their support by the time of the sentencing hearing.

I.G.  R.B. stated that Cooney showed her a video of child pornography and told R.B. that the child in the video was I.G.  R.B. refused Cooney's requests that she watch child pornography on other occasions.  Hyre confirmed that the child in the video was not I.G., but that it was a video Cooney circulated on Kik.

Hyre further explained that Cooney "shared . . . a total of seven [nonpornographic] . . . images of both [I.G.], [I.G.]'s little sister, and some . . . school age friends of" I.G. "in order to prove his bona fides that he was in fact [I.G.]'s father which he stated." *Id.* at 17.  Hyre explained that of the pornographic content found in Cooney's possession, much was "very heavily themed on . . . daddy-daughter incest type things." *Id.* at 20.  One file folder was named with I.G.'s first name and contained nonpornographic images of I.G. as well as four videos of child pornography.  The title of one of the videos indicated that the child portrayed was four years old, the same age I.G. was when Cooney last babysat her.

Hyre also reported speaking with another former girlfriend of Cooney's.  This woman told Hyre that she had discovered "an endless number of child pornography videos" on their shared computer. *Id.* at 23.  She further reported finding "that [Cooney] had done incest searches on her computer and . . . that while they were living together she found a pair of little girl panties in the house." *Id.*  She confronted Cooney, who "became very angry and abusive," grabbing her and leaving bruises on her arms. *Id.* at 23-24.

A.I. gave an unsworn victim impact statement. She stated that Cooney "created and got caught up in a complex belief" that he was related to and sexually active with I.G. *Id.* at 27. She told the court that the pictures Cooney took from her Facebook account and uploaded via Kik "are now circulating the websites known for child predators." *Id.* Cooney, she said, "was using them as bait to get his hands on more child pornography." *Id.* She urged the court to consider Cooney's "unborn daughter that [R.B.] is car[ry]ing who has no idea how much danger she is in the second she is born because her father is the worst type of sexual deviant that's fixated on incest with a child." *Id.* at 28. A.I. again asked that the district court sentence Cooney to the maximum sentence under the law.

Cooney declined to make any sentencing argument after A.I. spoke. The government requested an upward variance of 15 years' imprisonment but also expressed support for A.I.'s request, calling it "reasonable" and "supported by the evidence." Doc. 88 at 34. The government emphasized the fact, described in the PSR, that Cooney had solicited a video that is one of the "most sadistic videos of child pornography that we know about." *Id.* at 37. The government emphasized "the real danger posed by [Cooney] to children in [the] community, including his unborn daughter." *Id.* at 34-35. The government argued, "based on the totality of the circumstances in this case[,] that [Cooney] did" sexually assault I.G. *Id.* at 35.

And the government emphasized that Danziger diagnosed him with pedophilia "based on prior sexual contact with a six-year-old child." *Id.* at 38.

The district court once again confirmed its consideration of the PSR and its calculation and of the advisory guidelines, stating that it had "reviewed the presentence report and the advisory guidelines." *Id.* at 39. It also acknowledged that it had "consider[ed] . . . all of the factors identified in" 18 U.S.C. § 3553(a)." *Id.* at 45. The court explained that Cooney's was not "like just any other" child-pornography possession case, finding "particularly significant" the contents of A.I.'s letter. Doc. 88 at 39. The court further explained that Cooney was "a danger," but that Cooney was "entitled to some sort of mitigation" for "the fact that [he] did enter a plea." *Id.* at 40. The court sentenced Cooney to 228 months' imprisonment, one year shy of the statutory maximum, and told him that "there should be one year you get credit for accepting responsibility for what you did, but I cannot bring myself to give you any more credit than that. . . . [T]here's a pregnant woman whose child you should never have any access to until she's an adult." *Id.* at 40-41. The court imposed a 30-year term of supervised release to follow the term of imprisonment. The court noted that it had imposed "a substantial upward variance" and reiterated that "the basis for that is the [c]ourt believes that based on the evidence presented to the [c]ourt [Cooney] is a serious danger to the public now and in the future, also the severity of the relevant conduct," and, given that "Congress contemplated that there

11

was a possession of child porn case that was so awful that it would merit" the statutory maximum of 20 years, "[t]his is that case." *Id.* at 45. The court opined that the sentence it imposed was "sufficient, but not greater than necessary, to comply with the statutory purposes of sentencing." *Id.*

This is Cooney's appeal.

## II.    STANDARD OF REVIEW

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard, considering the totality of the circumstances and the sentencing factors set forth in 18 U.S.C. § 3553(a).[4] *Gall v. United States*, 552 U.S. 38, 41 (2007). Under § 3553(a), the district court is required to impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" of § 3553(a)(2)—the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, protect the public from the defendant's future criminal conduct, and effectively provide the defendant with educational or vocational training, medical care, or other correctional treatment. 18 U.S.C. § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences

---

[4] Cooney did not specifically object to the sentence the district court imposed, but his challenge is preserved because he requested a below-guideline sentence during the sentencing hearing and explained the basis for that request. *See Holguin-Hernandez v. United States*, 140 S. Ct. 762, 766-67 (2020) (holding that a defendant's argument for a specific sentence preserved his substantive reasonableness claim on appeal).

available, the applicable guidelines range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)-(7).

The party challenging a sentence bears the burden of proving the sentence is unreasonable. *United States v. Tome*, 611 F.3d 1371, 1378 (11th Cir. 2010). A district court imposes a substantively unreasonable sentence when it fails to afford consideration to relevant factors that were due significant weight, gives significant weight to an improper or irrelevant factor, or commits a clear error of judgment in considering the proper factors. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (en banc). The district court is free to "attach great weight to one factor over others." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (internal quotation marks omitted). But a sentencing court's "single-minded[]" focus on one factor to the detriment of other relevant sentencing factors "is a symptom of an unreasonable sentence." *United States v. Crisp*, 454 F.3d 1285, 1292 (11th Cir. 2006) (internal quotation marks omitted).

At the sentencing stage, a district court is permitted to consider a wide range of information. *See United States v. Behr*, 93 F.3d 764, 765-66 (11th Cir. 1996). The court is permitted to take into account any information relevant to the defendant's background, character, and conduct when determining whether an upward variance is appropriate. *Tome*, 611 F.3d at 1379. The court may not,

13

however, rely on inaccurate or unreliable information. *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010). Ultimately, we will vacate a sentence only if we are "left with the definite and firm conviction that the district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." *Irey*, 612 F.3d at 1190 (internal quotation marks omitted).

When a sentencing court varies above the advisory guideline range, it must provide a justification that is "'sufficiently compelling to support the degree of the variance.'" *Id.* at 1186 (quoting *Gall,* 552 U.S. at 50). We do not assume a sentence outside the guideline range is unreasonable and must give due deference to the district court's decision that the extent of the variance is justified by the § 3553(a) factors. *Id.* at 1187.

## III. DISCUSSION

Cooney argues that his sentence is substantively unreasonable.[5] Specifically, he argues that the district court (1) committed a clear error in judgment in balancing

---

[5] Although Cooney argues in his initial brief that his sentence is "procedurally defective," Appellant's Br. at 21, he clarifies in his reply brief that he is not asserting that his sentence is procedurally unreasonable, only that it is substantively unreasonable, *see* Reply Br. at 1-2. Nevertheless, we note that his specific objection that the district court did not start with the advisory guidelines but rather with the statutory maximum is an argument that sounds in procedural unreasonableness. Since Cooney did not object on this basis in the district court (nor on the other grounds that he raises in his substantive-reasonableness argument), these arguments would be subject to plain-error review in the procedural-reasonableness framework. A defendant may not avoid application of plain-error review by recharacterizing what is clearly a procedural-reasonableness argument under our precedent as a substantive-reasonableness argument.

the § 3553(a) sentencing factors by using the statutory maximum sentence rather than the guidelines as a starting point; (2) gave improper weight to A.I.'s suspicions about the sexual abuse of I.G.; and (3) failed to consider significant mitigating factors.  We address these arguments in turn.

First, the record belies Cooney's argument that the district court used the statutory maximum and not Cooney's guidelines range as a starting point for determining the appropriate sentence.  The court's first statement in announcing Cooney's sentence was that it had considered the guidelines, and the court repeated the correct guidelines range as calculated in the PSR.  Only then, after establishing that baseline, did the court determine that Cooney's was not the ordinary case and that it warranted an upward variance from the guidelines range to the statutory maximum because of particular aggravating circumstances.  The district court nevertheless deemed it appropriate to give Cooney a reduction from what it thought would otherwise have been the appropriate sentence, for acceptance of responsibility, akin to a reduction Cooney received in his guidelines calculation.  We discern no error in this respect.

We also reject Cooney's second argument, that his sentence is unreasonable because the district court unjustifiably relied on A.I.'s statements.  Cooney argues

---

Nonetheless, for purposes of this review and since it makes no difference to the ultimate outcome here, we consider within the substantive-unreasonableness rubric all the arguments Cooney raises.

15

that A.I.'s statements were unrelated to the instant offense and unreliable because there was no evidence that he actually sexually abused I.G.  We disagree.  A.I.'s letter and statements were related to the offense because they explained Cooney's relationship with I.G. and provided background for his use of photos of I.G. to obtain child pornography.  Moreover, information about A.I.'s belief that Cooney had abused I.G. was relevant to the district court's consideration of the § 3553(a) factors, specifically, the need to protect others from Cooney's future crimes.  *See* 18 U.S.C. § 3553(a)(2)(C).  Not only that, but the evidence concerning A.I. suggested Cooney's continuing obsession with I.G. and supported the district court's conclusion that Cooney represented a danger to the public (in particular to I.G. and to his unborn child).

The information A.I. supplied also had sufficient indicia of reliability.  A district court can consider "any information, (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the evidence has sufficient indicia of reliability, the court makes explicit findings of fact as to credibility, and the defendant has an opportunity to rebut the evidence."  *Ghertler*, 605 F.3d at 1269 (internal quotation marks omitted).  Each of these conditions is satisfied here.  A.I.'s statements were supported by letters from therapists, information in the PSR, and Hyre's testimony (including his discussion of Cooney's former girlfriends' statements corroborating

16

Cooney's obsession with I.G. and his sexual interaction with her). The district court found A.I.'s letter and statement to be credible, finding the information in them to be "particularly significant." Doc. 88 at 39.[6] And Cooney had an opportunity to rebut A.I.'s statements but simply declined to do so, other than to rely on Danziger's report, which did not account for A.I.'s allegations and evidence or for any evidence that Cooney had ever had sexual contact with a minor.

Nor has Cooney convinced us that the district court focused myopically on A.I.'s statements to the exclusion of other relevant evidence. True, the district court found "particularly significant" A.I.'s letter to the court, Doc. 88 at 39, but this statement by no means suggests that the court arrived at its sentence solely because of the letter. Rather, the record shows that the court carefully considered multiple sources of information to conclude that Cooney was a danger, including Hyre's testimony about the type of child pornography Cooney had solicited and the substance of R.B.'s interview. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring the district court to consider the need for the sentence "to protect the public from further crimes of the defendant"). It was within the court's discretion to "attach great weight" to the need to protect the public from Cooney's future crimes. *Rosales-Bruno*, 789 F.3d at 1254 (internal quotation marks omitted).[7]

---

[6] Cooney does not argue that this was insufficient as a credibility determination.

[7] Cooney argues, for the first time in his reply brief, that even if A.I.'s statements were reliable, his sentence is still unreasonable because it is higher than the top of what his guidelines

17

Third, Cooney argues that his sentence is unreasonable because the district court failed to give sufficient weight to substantial mitigating factors, including that he had not previously offended, was the victim of sexual assault and molestation as a child, had stable employment and was seen in the community as a man of good character, and was, according to Danziger, not at a heightened risk of danger to the community or children. We conclude, however, that the district court did not abuse its discretion in considering the evidence regarding Cooney's abuse of I.G. and other aggravating evidence to outweigh this evidence in mitigation.

The district court acknowledged that it had reviewed the PSR, which contained Cooney's low criminal-history score, employment history, and report of his molestation as a child. Although Danziger opined that Cooney was not a heightened risk of danger, Danziger did not account for A.I.'s allegations regarding Cooney's abuse of I.G. and the evidence supporting her allegations. For this reason, the district court was entitled to give more weight to A.I.'s statements than to Danziger's opinion. The district court did not expressly mention the letters of support Cooney submitted that attested to his good character, but there is no requirement that the court explicitly state that it has reviewed every piece of evidence. *See Rita v. United States*, 551 U.S. 338, 356 (2007) (explaining that a

---

range would have been had enhancements for child exploitation been included. Issues raised for the first time in a reply brief are deemed waived. *United States v. Curtis*, 380 F.3d 1308, 1310 (11th Cir. 2004). We therefore do not address Cooney's argument.

18

district court is only obligated to "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments"). We therefore discern no abuse of discretion in the district court's consideration of the mitigating versus aggravating evidence in this case.

Cooney essentially asks us to reweigh the § 3553(a) factors, but our standard of review precludes us from doing so. *See United States v. Johnson*, 803 F.3d 610, 620 (11th Cir. 2015) ("[T]he weight to be given each of the[] factors was within the district court's discretion, and we will not reweigh the factors."). The district court imposed a significant variance, but it did so only after carefully considering the information in the PSR and its attachments, the guidelines calculations, A.I.'s statements, Hyre's testimony, and the § 3553(a) factors. Cooney's arguments do not leave us "with the definite and firm conviction that the district court committed a clear error of judgment." *Irey*, 612 F.3d at 1190 (internal quotation marks omitted). We therefore affirm.

**AFFIRMED.**

19