[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

————————————————

No. 22-13088

Non-Argument Calendar

————————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

EVARISTO MARIN-DOMINGUEZ,

Defendant-Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:21-cr-00333-SDM-JSS-1

————————————————

Before JORDAN, ANDERSON, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Defendant appeals the 235-month sentence he received after pleading guilty to one count of conspiring to possess and distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(viii) and one count of distributing and possessing with intent to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). On appeal, Defendant challenges the substantive reasonableness of his sentence. After careful review, we affirm.

## BACKGROUND

Defendant was indicted in 2021 on two counts involving the possession and distribution of methamphetamine in violation of 21 U.S.C. §§ 841 and 846. Based on the undisputed facts set out in the presentence report ("PSR"), a confidential source ("CS") contacted a broker in Mexico in late 2020 with an offer to purchase a kilogram of methamphetamine for $12,000. The broker provided contact information for Defendant, and the CS contacted Defendant and arranged for the purchase. Defendant subsequently accepted two $6,000 payments from the CS in return for the agreed upon methamphetamine. During one exchange, Defendant told the CS he had just delivered 8 kilograms of methamphetamine and had 16 more available. The United States Drug Enforcement Administration ("DEA") later determined that the methamphetamine

delivered by Defendant to the CS weighed 964.8 grams with a 94% purity, a value identified as "Ice" or actual methamphetamine.

Defendant was arrested a year later. When searched, Defendant was found to be in possession of 5.2 grams of methamphetamine and a glass smoking device. Defendant admitted during questioning that (1) he was involved in the sale of large quantities of methamphetamine, (2) he received regular shipments of methamphetamine from a source in Mexico for resale in the United States, and (3) there was a large amount of methamphetamine at his residence in Lake Placid, Florida. During their subsequent search of Defendant's residence, officers seized approximately 3.8 kilograms of methamphetamine, 247.2 grams of heroin, and 369.8 grams of cocaine, in addition to numerous firearms, ammunition, drug paraphernalia, five Android smartphones, and two handwritten ledgers.

Defendant pled guilty to both counts of the indictment. The PSR determined that Defendant was accountable for 11.8 kilograms of methamphetamine (including the 8 kilograms he admitted to delivering and the 3.8 kilograms found at his residence), 247.2 grams of heroin, 369.8 grams of cocaine, and 964.8 grams of Ice. Pursuant to USSG § 2D1.1, the PSR applied a 10:1 conversion rate multiplier to the quantity of Ice based on its purity, resulting in a converted drug weight of 19,296 kilograms. Added to the converted weights of the other drugs involved in the exchange with the CS and found on Defendant's person and in his residence, the PSR calculated Defendant's offense as involving approximately

43,217.16 total kilograms of converted drug weight and assigned him a base offense level of 36. Two levels were added under § 2D1.1(b)(1) as a result of the firearms found in Defendant's residence, and an additional two levels were added under § 2D1.1(b)(5) because his offense involved the importation of methamphetamine. After applying a three-level reduction for acceptance of responsibility under § 3E1.1, Defendant's total offense level was set at 37. With a criminal history category of I, Defendant's guidelines range was determined to be 210 to 262 months.

Defense counsel filed a sentencing memorandum in which he challenged the PSR's application of the 10:1 ratio multiplier to calculate the weight of the 964.8 grams of Ice Defendant delivered to the CS. Counsel acknowledged in the memorandum the Sentencing Commission's stated rationale for treating higher purity mixtures of narcotics such as Ice more harshly—namely, that when a defendant is in possession of unusually pure drugs it often indicates a prominent role in the criminal enterprise and proximity to the source of the drugs. *See* USSG § 2D1.1, comment. (n. 27(c)). But he noted a lack of empirical data to support that rationale in methamphetamine cases, where the supply largely comes from outside the United States and the purity is consistently high. And Defendant cited a recent Ice case from the Middle District of Florida in which a different district judge declined to impose on the defendant before him the tenfold increase prescribed by the Sentencing Guidelines. Counsel asked the court to follow that earlier judge's lead and reject the distinction between Ice and less pure forms of methamphetamine in Defendant's case. Doing so, he

argued, would bring the converted drug weight in Defendant's case down to approximately 26,000 kilograms, resulting in a base offense level of 34 instead of 36.

At sentencing, defense counsel again urged the court to ignore the Ice multiplier, recalculate Defendant's base offense level at 34, and sentence Defendant to 120 months. The court declined, specifically rejecting counsel's argument that applying the multiplier would create a sentencing disparity and stating that a sentence in the guidelines range set out in the PSR would be in the "mainstream" for offenders who were similarly situated to Defendant. In Defendant's case, the court concluded, a guidelines sentence was warranted given the duration of his offense and the quantity of drugs involved. The court then imposed concurrent sentences of 235 months for each of Defendant's counts, to be followed by 60 months of supervised release. Defense counsel objected to the sentence, but the court declined to reconsider it.

Defendant now appeals, challenging the substantive reasonableness of his sentence. In his appellate briefing, Defendant argues the district court failed to give any weight to the need to avoid unwarranted sentencing disparities between similarly situated defendants while imposing sentence on Defendant. We find no error, and thus affirm.

## DISCUSSION

We review sentencing decisions only for abuse of discretion and we ordinarily use a two-step process. *See United States v. Cubero*, 754 F.3d 888, 892 (11th Cir. 2014). First, we determine whether the

sentence is procedurally sound. *See id.* If it is, we then examine whether the sentence is substantively reasonable given the totality of the circumstances and the sentencing factors set out in 18 U.S.C. § 3553(a).[1] *Id.* At both steps of the process, the party challenging the sentence bears the burden of showing it is unreasonable. *See United States v. Pugh*, 515 F.3d 1179, 1189 (11th Cir. 2008).

Defendant concedes his sentence is procedurally sound, but he challenges its substantive reasonableness. Substantive reasonableness is measured based on the "totality of the . . . circumstances" considering the § 3553(a) factors. *See United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010). The district court has "great discretion in determining how to weigh" the relevant factors in a particular case. *Pugh*, 515 F.3d at 1203. And generally, a sentence is substantively reasonable unless it "lies outside the range of reasonable sentences dictated by" the relevant sentencing considerations and the facts of the case. *Irey*, 612 F.3d at 1190 (citations and quotation marks omitted). Consequently, a defendant cannot prevail on a substantive reasonableness claim merely by showing that a lesser sentence would also be reasonable or may even be more

---

[1] The § 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (3) the need for deterrence, (4) the need to protect the public, (5) the need to provide the defendant with needed education or vocational training or medical care, (6) the kinds of sentences available, (7) the sentencing guidelines range, (8) pertinent policy statements of the sentencing commission, (9) the need to avoid unwarranted sentencing disparities, and (10) the need to provide restitution to victims. 18 U.S.C. § 3553(a).

reasonable to some judges. *Id.* at 1191 ("We may not . . . set aside a sentence merely because we would have decided that another one is more appropriate."). Instead, he must show that the district court committed a clear error of judgment because the sentence is "grounded solely on one factor, relies on impermissible factors, ignores relevant factors in the sentencing context, or balances the relevant factors in an unreasonable manner." *United States v. Rodriguez*, 34 F.4th 961, 976 (11th Cir. 2022) (citations and quotation marks omitted).

Defendant has not shown such a clear error of judgment here. We note at the outset that his 235-month sentence is within the guidelines range. "Although we do not automatically presume a sentence within the guidelines range is reasonable, we ordinarily expect [such] a sentence . . . to be reasonable." *United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (quotation marks omitted). Defendant's sentence is also well below the statutory maximum term of life imprisonment available for his offense under 21 U.S.C. § 841(b)(1)(A)(viii), another indicator of substantive reasonableness. *See United States v. Carpenter*, 803 F.3d 1224, 1234 (11th Cir. 2015).

Further, the record reflects that the district court conducted an individualized assessment of all the relevant circumstances and factors—emphasizing, among other things, the seriousness and long-term nature of Defendant's offense, the large quantities of drugs and cash involved, and the fact that numerous firearms were found at Defendant's residence—and ultimately determined that a

mid-level guidelines sentence of 235 months was warranted by the facts of the case. We cannot say the court committed a clear error of judgment in its decision, or that the 235-month sentence "lies outside the range of reasonable sentences dictated by the facts of the case." *See Irey*, 612 F.3d at 1190 (quotation marks omitted).

Defendant argues, however, that because another district judge in the Middle District of Florida, in a different case, declined to apply the 10:1 Ice ratio prescribed by the Guidelines, the compliance with the Guidelines' formula by the district court in the present case gave rise to an unreasonable sentence. According to Defendant, the district court's failure to "make an adjustment" to his sentence based on that fact is a clear and reversible error of judgment because it reflects a failure to give the proper weight to the need to avoid unwarranted sentencing disparities, one of the § 3553(a) factors. Essentially, Defendant is arguing that the district court was required to ignore the 10:1 ratio in his case because some other judge or judges may have declined to apply it in other cases. As evident from the discussion above, that argument conflicts with this Court's precedent governing substantive reasonableness. *See Irey*, 612 F.3d at 1191 (emphasizing that a sentence is not substantively unreasonable merely because another judge might have chosen a different sentence).

Moreover, it is apparent from the record that the district court considered the need to avoid sentencing disparities, along with the other relevant § 3553(a) factors, at Defendant's sentencing. Indeed, the sentencing judge expressly stated at Defendant's

sentencing hearing, "I also consider the avoidance of unwarranted disparity." But based on the specific facts of the case—including evidence indicating that Defendant was not a low-level dealer but an individual who had direct contact with a supplier in Mexico and who had been distributing multi-kilogram quantities of methamphetamine on a regular basis for a long period of time—the court concluded that a mid-level guidelines sentence would create no such disparity here. On the contrary, the court explained, a mid-level guidelines range sentence "would be in the mainstream" for similarly situated offenders despite the possibility that another judge might have declined to apply the Ice ratio and arrived at a different sentence. That conclusion was well within the court's discretion. *See United States v. Crisp*, 454 F.3d 1285, 1290 (11th Cir. 2006) ("In any given case there will be a range of sentences that are reasonable and the district court gets to pick within that range.").

In short, it was not an abuse of discretion for the district court to apply the policy established by the Sentencing Commission with respect to Ice methamphetamine. Again, to prevail on his substantive reasonableness claim, Defendant has the burden of showing his sentence is unreasonable given all the relevant factors and circumstances and despite the "substantial deference afforded sentencing courts." *See United States v. Rosales-Bruno*, 789 F.3d 1249, 1256 (11th Cir. 2015). He has not carried that burden here.

## CONCLUSION

For the foregoing reasons, Defendant's sentence is **AFFIRMED**.